MICHELLE MURPHY, CONSERVATOR (ESTATE OF
PAUL SYLVAN) *v.* GEORGE WAKELEE
(SC 15838)

Borden, Norcott, Katz, Palmer and Peters, Js.

Argued November 4—officially released December 29, 1998

*A. Paul Spinella,* with whom, on the brief, was *Christian J. Moran,* for the appellant (plaintiff).

*James E. Coyne,* with whom, on the brief, was *Colleen D. Fries,* for the appellee (defendant).

KATZ, J. In this certified appeal we must decide whether, when breach of a fiduciary duty has been alleged, the burden to prove fair dealing by clear and convincing evidence shifts to the defendant in cases that do not involve claims of fraud, self-dealing or conflict of interest. We conclude that unless the allegation involves such claims, the burden does not shift.

The Appellate Court opinion sets forth the following relevant facts. "On October 7, 1963, Theodore Sylvan created an irrevocable, inter vivos trust referred to as the Ramp Garage Trust (trust). The trust designated Paul Sylvan (Sylvan) as beneficiary. On February 24, 1989, the defendant [George Wakelee] was appointed conservator of Sylvan's estate.

"On July 23, 1987, Sylvan entered the DATAHR facility, a residence for mentally handicapped individuals and applied to the state department of income maintenance (department) for financial assistance under Title XIX-ND Medical Assistance Program. On October 15, 1987, the department resources division denied Sylvan's application for Title XIX-ND benefits claiming that the corpus of the trust was available to pay his medical expenses.

"Subsequently, Sylvan timely appealed the department's decision and an administrative hearing was held before a fair hearing officer on January 17, 1989. The fair hearing officer determined that the trust could be used to pay for Sylvan's medical care at DATAHR. Accordingly, the fair hearing officer upheld the department's decision to deny Sylvan Title XIX-ND benefits. No appeal was taken from the fair hearing officer's decision and the corpus of the trust was invaded and fully exhausted to pay for Sylvan's general medical care and support.

"On February 24, 1993, the plaintiff, Michelle Murphy, was appointed to replace the defendant as conservator of Sylvan's estate. Thereafter, Murphy filed a complaint against the defendant alleging that the defendant, in his capacity as conservator, was negligent in failing to appeal the hearing officer's decision denying Sylvan Title XIX-ND benefits. A jury trial was held and the jury rendered a verdict in favor of the defendant on all counts in the complaint." *Murphy* v. *Wakelee*, 46 Conn. App. 425, 426–27, 699 A.2d 301 (1997).

On appeal to the Appellate Court, the plaintiff claimed, inter alia, that the trial court improperly had instructed the jury regarding the parties' burden of proof with respect to the duties of a fiduciary. The trial court had instructed the jury that the plaintiff had the burden of proving that the defendant, as conservator, was negligent and that his negligence was a proximate cause of the injury to Sylvan's estate. The trial court concluded, however, by instructing the jury further that if it were to find that the plaintiff had proven negligence and causation by a preponderance of the evidence, the burden would then shift to the defendant to prove by clear and convincing evidence that he had not engaged in unfair dealing. The Appellate Court concluded that the charge was proper. Id., 429.

We granted the plaintiff's petition for certification to consider whether the Appellate Court properly concluded that the trial court's instructions regarding the burden of proof as to the duties of the defendant in his fiduciary capacity were proper.[1] *Murphy* v. *Wakelee*, 243 Conn. 956, 704 A.2d 805 (1997). The defendant asserts as alternate grounds for affirmance of the Appellate Court

[1] We granted the plaintiff's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that the trial court properly instructed the jury regarding the parties' burden of proof with respect to the duties of the defendant fiduciary?" *Murphy* v. *Wakelee*, 243 Conn. 956, 704 A.2d 805 (1997).

judgment that (1) the plaintiff's complaint does not allege a breach of a fiduciary duty, thereby eliminating the necessity of a burden-shifting instruction, and (2) assuming that the complaint *did* allege a breach of a fiduciary duty, the trial court was not required to provide a burden-shifting instruction in the absence of an assertion that the defendant had engaged in fraud or self-dealing. We agree with the defendant's second alternate ground for affirmance[2] that, in the absence of a claim of fraud, self-dealing or conflict of interest,[3] the trial court was not required to charge the jury that the defendant had a duty to prove his fair dealing by clear and convincing evidence.[4] Accordingly, we affirm the judgment of the Appellate Court.

It is important at the outset to state what this case is *not* about. The plaintiff has not alleged that the defendant engaged in self-dealing. Nor has she alleged that his conduct was fraudulent or that he manifested a

[2] In the first count of her complaint, the plaintiff alleged that the defendant, pursuant to General Statutes (Rev. to 1989) § 45-75, now § 45a-655, had acted as conservator of Sylvan's estate and set forth the facts from which the fiduciary duty arose. Despite the fact that the plaintiff does not identify the defendant as a fiduciary, she does state clearly that she brought the action against him as a conservator, as distinguished from the third count of the complaint, which is against the defendant individually and which asserts numerous claims of negligence in his role as an attorney. Because the defendant was a conservator, he owed a fiduciary duty to his ward, regardless of whether that duty had been specifically so labeled in the complaint. See Practice Book § 10-4, formerly § 110 ("unnecessary to allege any . . . duty which the law implies from the facts pleaded"). We, therefore, conclude that the trial court reasonably concluded that the first count of the complaint alleged a claim of breach of fiduciary duty. *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 264, 684 A.2d 693 (1996).

[3] Although the defendant argues only that allegations of fraud or self-dealing require a burden-shifting instruction, we consider an allegation of conflict of interest, which also describes a basic deviation from the duty owed by a fiduciary to a beneficiary, to similarly warrant this heightened jury charge.

[4] Accordingly, the trial court's instructions were more favorable than those to which the plaintiff was actually entitled.

conflict of interest. The claim of breach of the defendant's fiduciary duty is premised *solely* upon his alleged negligence as conservator in failing to preserve properly his ward's assets by neglecting to appeal the hearing officer's decision denying Sylvan Title XIX-ND benefits.

Our law on the obligations of a fiduciary is well settled. "[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Internal quotation marks omitted.) *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 219, 635 A.2d 798 (1994). "Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Citations omitted; internal quotation marks omitted.) *Dunham* v. *Dunham*, 204 Conn. 303, 322–23, 528 A.2d 1123 (1987). Proof of a fiduciary relationship, therefore, generally imposes a twofold burden on the fiduciary. First, the burden of proof shifts to the fiduciary; and second, the standard of proof is clear and convincing evidence.

Although we have not *expressly* limited the application of these traditional principles of fiduciary duty to cases involving only fraud, self-dealing or conflict of interest, the cases in which we have invoked them have involved such deviations. In *Dunham*, the defendant, an attorney, had performed his family's estate planning and had drafted his mother's will which, coincidentally, left him substantial assets and named him executor of

her estate. Id., 306. He then consolidated the entire family's property in his name, leaving the plaintiff, his brother, with virtually nothing. Id. We concluded that the trial court correctly had instructed the jury that if it found a fiduciary relationship, the burden shifted to the attorney son to prove fair dealing.[5] Id., 323.

In *Alaimo* v. *Royer*, 188 Conn. 36, 41, 448 A.2d 207 (1982), this court recognized a fiduciary relationship between the plaintiff, an elderly disabled woman, and the defendant, the president of a real estate investment club upon whom she had been encouraged to rely. The court held that in light of the allegations that the plaintiff had given the defendant her life savings for purposes of investment and that he had not paid interest but had instead spent the money, the burden shifted to the defendant to prove fair dealing.

In *Sisk* v. *Jordan Co.*, 94 Conn. 384, 390, 109 A. 181 (1920), we reiterated the rule that "[a] fiduciary claiming a benefit from his dealing with his cestui que trust . . . should be made to prove that he dealt in fairness and under the conditions prescribed by law. The full knowledge of the transaction is within his possession; he can and he must assume the burden of its proof. This rule we applied in a transaction between a trustee and a cestui que trust. *Nichols* v. *McCarthy*, 53 Conn. 299, 319, 23 [A.] 93 [1885]. And likewise in the case of a transfer by an heir to the administrator. *State* v. *Culhane*, 78 Conn. 622, 629, 63 [A.] 636 [1906]."

In *State* v. *Culhane*, supra, 78 Conn. 628, we stated that "[i]t is a thoroughly well-settled equitable rule that

---

[5] In *Dunham*, we also referred to cases in other jurisdictions that held that conveyances of property from clients to attorneys are presumptively fraudulent and that the attorneys bear the burden to prove fair dealing by clear and convincing evidence. See *Hicks* v. *Clayton*, 67 Cal. App. 3d 251, 262, 136 Cal. Rptr. 512 (1977); *Nelson* v. *Walden*, 186 So. 2d 517, 519 (Fla. App. 1966); *In the Matter of Miller*, 568 S.W.2d 246, 251 (Mo. 1978).

any one acting in a fiduciary relation shall not be permitted to make use of that relation to benefit his own personal interest. This rule is strict in its requirements and in its operation. It extends to all transactions where the individual's personal interests may be brought into conflict with his acts in the fiduciary capacity, and it works independently of the question whether there was fraud or whether there was good intention. . . . The rule applies alike to agents, partners, guardians, executors and administrators. In *Nichols* v. *McCarthy*, [supra, 53 Conn. 316], this court, quoting the language of Pomeroy's Equity Jurisprudence (3d Ed.), Vol. 2, § 958, said: A purchase by a trustee from his cestui que trust, even for a fair price and without any undue advantage, or any other transaction between them by which the trustee obtains a benefit, is generally voidable, and will be set aside on behalf of the beneficiary; it is at least prima facie voidable upon the mere facts thus stated. There is, however, no imperative rule of equity that a transaction between the parties is necessarily, in every instance, voidable. It is possible for the trustee to overcome the presumption of invalidity. And again [in *Nichols* v. *McCarthy*, supra, 317], quoting from Perry on Trusts (5th Ed.), Vol. 1, § 194: If parties within the prohibited relations or conditions contract between themselves, courts of equity will avoid the contract altogether, without proof, or they will throw upon the party standing in this position of trust, confidence, and influence, the burden of proving the entire fairness of the transaction. The equitable doctrine thus stated applies with equal strictness to executors and administrators. [2 Pomeroy, supra] § 963." (Internal quotation marks omitted.)

In the cases concerning self-dealing in corporate transactions, we have stated that, if a director of a corporation enters into a transaction with the corporation that will inure to his or her individual benefit, the director bears the burden of proving that the transaction

is "fair, in good faith and for adequate consideration . . . ." *Rosenfield* v. *Metals Selling Corp.*, 229 Conn. 771, 795–96, 643 A.2d 1253 (1994); *Osborne* v. *Locke Steel Chain Co.*, 153 Conn. 527, 534, 218 A.2d 526 (1966) ("director of a corporation has the burden of showing that any personal dealing with the corporation is fair, in good faith and for adequate consideration"); *Klopot* v. *Northrup*, 131 Conn. 14, 20–21, 37 A.2d 700 (1944) ("[w]here a director of a corporation enters into a transaction with it which will inure to his individual profit, we have held that he has the burden of proving that the transaction is entirely fair, made in good faith, for an adequate consideration and upon a full understanding"); *Massoth* v. *Central Bus Corp.*, 104 Conn. 683, 689, 134 A. 236 (1926) (where director of corporation "deals with it as an individual, not himself participating in the transaction on behalf of the corporation, the burden rests upon him to show the transaction was entirely fair, made in good faith, for an adequate consideration, and upon a full understanding"); *Sisk* v. *Jordan Co.*, supra, 94 Conn. 391 (where "[i]n his dealing with the corporation, both in his loans of money and credit, and in his purchases, the individual interest of [the plaintiff] and his fiduciary interest as director met . . . the burden was upon him to show that each of the transactions was fair and equitable"); see also 1 A.L.I., Principles of Corporate Governance: Analysis and Recommendations (1994) § 4.01 (c), comment (d), pp. 176–77 (business judgment rule is safe harbor except where matters of conflict exist; where director is interested, business judgment rule is inapplicable and burden shifts to director to prove transaction fair and reasonable to corporation).

We have applied this distinction in our cases concerning allegations of corporate misconduct involving usurpation of a corporate opportunity. "The framework

governing a claim of usurpation of a corporate opportunity differs only in part from the basic corporate fiduciary framework." *Ostrowski* v. *Avery*, 243 Conn. 355, 362, 703 A.2d 117 (1997). If a corporate officer is presented with a business opportunity that the corporation is financially able to undertake, is in line with its business and is one in which the corporation has an interest or expectancy, the self-interest of the officer will be brought into conflict with the interest of the corporation and the law will not permit him to seize the opportunity for himself. To prevail on a claim of usurpation, we observed, in *Katz Corp.* v. *T. H. Canty & Co.*, 168 Conn. 201, 207–208, 362 A.2d 975 (1975), that a plaintiff bears the burden of establishing: (1) a fiduciary relationship between the corporation and the alleged wrongdoers; and (2) the existence of a corporate opportunity. "The doctrine of corporate opportunity . . . is but one phase of the cardinal rule of undivided loyalty on the part of fiduciaries. In other words, one who occupies a fiduciary relationship to a corporation may not acquire, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence." (Internal quotation marks omitted.) Id., 208. Once a plaintiff establishes the relationship and the corporate opportunity, the burden then shifts to the fiduciaries to establish, by clear and convincing evidence, the fairness of their dealings with the corporation. *Ostrowski* v. *Avery*, supra, 362.

Finally, we have applied these same rules to cases involving partners who self-deal. See *Oakhill Associates* v. *D'Amato*, 228 Conn. 723, 726–27, 638 A.2d 31 (1994) (claim of plaintiff partnership, in which named defendant was one of four partners, that defendant breached fiduciary duty by charging excessive amounts for construction work by defendant corporation, of which named defendant was majority shareholder, principal,

officer and director); *Konover Development Corp.* v. *Zeller*, supra, 228 Conn. 211, 229–30 (claim of limited partner that general partner breached its fiduciary duty by terminating project requiring it to reimburse general partner for all " 'out-of-pocket' expenditures" and to withdraw from partnership leaving general partner with 100 percent ownership of all real estate, permits and property rights).

Although not always expressly stated, the basis upon which the aforementioned burden-shifting and enhanced burden of proof rests is, essentially, that undue influence will not be presumed; *Connell* v. *Colwell*, 214 Conn. 242, 252, 571 A.2d 116 (1990) (fraud is not presumed and burden of establishing fraud rests on party who alleges it); and that the presumption of fraud does not arise from the relationship itself. We note, however, "that [this] rule is somewhat relaxed in cases where a fiduciary relation exists between the parties to a transaction or contract, and where one has a dominant and controlling force or influence over the other. In such cases, *if the superior party obtains a possible benefit*, equity raises a presumption against the validity of the transaction or contract, and casts upon such party the burden of proving fairness, honesty, and integrity in the transaction or contract." (Emphasis added.) 37 Am. Jur. 2d 601–602, Fraud and Deceit § 441 (1968); see also *United Founders Life Ins. Co.* v. *Carey*, 347 S.W.2d 295, 307 (Tex. App. 1961) (when fiduciary relationship is shown and involved transaction is attacked for fraud and party accused has obtained advantage, presumption of unfairness arises which such party must dispel by showing transactions fairly made), rev'd on other grounds, 363 S.W.2d 236 (Tex. 1962). Therefore, it is only when the "confidential relationship is shown together with suspicious circumstances, or where there is a transaction, contract, or transfer

between persons in a confidential or fiduciary relationship, and where the dominant party is the beneficiary of the transaction, contract, or transfer," that the burden shifts to the fiduciary to prove fair dealing. 25 Am. Jur. 2d 551, Duress and Undue Influence § 38 (1996). A fiduciary seeking to profit by a transaction with the one who confided in him has the burden of showing that he has not taken advantage of his influence or knowledge and that the arrangement is fair and conscientious. Id., 552; see also *Nichols* v. *McCarthy*, supra, 53 Conn. 307–308. Therefore, we read the burden-shifting language in our cases, not in a vacuum as the plaintiff suggests, but, rather, against the backdrop of the circumstances that raised the presumption of fraud.

Finally, the plaintiff argues that should this court adopt a rule shifting the burden only in cases alleging fraud, self-dealing or conflict of interest, an exception should be carved out for cases involving conservators. She proposes that when a conservator, appointed to care for and manage the estate of an incompetent individual, is the fiduciary, the burden-shifting should apply even in the absence of a claim of fraud, self-dealing or conflict of interest. We disagree. We see no reason to carve out an exception solely because the plaintiff's ward is incompetent. Indeed, on the contrary, because the conservator's duties are so prescribed, there is less reason for concern. As this court stated in *Marcus' Appeal from Probate*, 199 Conn. 524, 528–29, 509 A.2d 1 (1986): "A conservator has only such powers as are expressly or impliedly given to him by statute. . . . In exercising those powers, he is under the supervision and control of the Probate Court . . . [which] is under an 'affirmative duty' to protect the assets of an incompetent's estate. . . . The court, and *not the conservator*, is primarily entrusted with the care and management of the ward's estate, and, in many respects, the conservator is but the agent of the court. . . . Under our

law, it is clear that the conservator acts under the supervision and control of the Probate Court in the care and management of the ward's estate. It is equally clear that the Probate Court is without jurisdiction to approve of any acts by the conservator unless those acts are authorized by statute." (Citations omitted; emphasis in original; internal quotation marks omitted.)

All fiduciary relationships, to some degree, "[require] confidence of one in another and a certain inequity or dependence arising from weakness of age, mental strength, business intelligence, knowledge of facts involved, or other conditions which give one an advantage over the other." *Gillespie* v. *Seymour*, 14 Kan. App. 2d 563, 567, 796 P.2d 1060 (1990), rev'd in part on other grounds, 250 Kan. 123, 823 P.2d 782 (1991). Therefore, we perceive no principled basis upon which to craft the proposed exception for conservators.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.