[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE (No. 108)
The motion to strike now before the court raises an important question concerning the tort of breach of fiduciary duty in the context of an action (in this case a counterclaim) brought by a client against her CT Page 5915 attorney. While a cause of action of this description unquestionably exists, the question presented here is whether it can be established by negligent conduct alone. For the reasons set forth below, the answer to this question is No. A second question presented by the same motion is whether an attorney's alleged failure to conform to the prevailing professional standard of care can be simultaneously asserted in separate counts of negligence and breach of contract. As will be seen, the answer to this second question is Yes.
The plaintiff, Jean Welty, is an attorney. It is undisputed that in 1997, the defendant, Debra Criscio, retained Welty to represent her in a dissolution of marriage action. Criscio gave Welty a retainer, the exact amount of which is in some dispute, but is now dissatisfied with the results. On July 21, 1999, Welty commenced this action against Criscio for nonpayment of the asserted balance due.
On November 12, 1999, Criscio filed an answer and a counterclaim consisting of six counts. The first count alleges "Breach of Fiduciary Duty/Confidential Relationship." This count alleges that Welty was "negligent" in a number of specified ways, principally in failing to adequately research the equity in a home owned by Criscio and her spouse. The first count goes on to say that, "As a result of Welty's aforementioned actions and lack thereof, Welty misrepresented her level of expertise and/or the level of legal services she promised to deliver to Debra." The prayer for relief as to this count demands attorney's fees and punitive damages as well as compensatory damages. The second through fifth counts allege different causes of action based upon the factual scenario just recounted. The second count alleges "Negligence/Legal Malpractice." The third count alleges "Misrepresentation." The fourth count alleges "Breach of Contract." The fifth count alleges "Negligent Infliction of Emotional Distress." The Sixth Count, which adds the fact that Welty accepted money from Criscio, alleges "Unjust Enrichment."
On January 24, 2000, Welty filed the motion to strike now before the court. The motion seeks to strike the first and fourth counts of the counterclaim as well as the prayer for punitive damages and attorney's fees as to that count. The motion was heard on May 8, 2000. The parties were given an opportunity to file supplemental briefs by May 15, 2000, but no such briefs have been filed.
The first count of the counterclaim and the prayer for punitive damages and attorney's fees are expressly linked in Criscio's pleadings. The counterclaim seeks punitive damages and attorney's fees only with respect to the first count. If the first count is struck, the prayer for punitive damages and attorney's fees must necessarily be struck along CT Page 5916 with it. With this in mind, the first count must now be examined to determine if that count adequately pleads an action for breach of fiduciary duty.
The factual allegations of the first count are allegations of negligence. In fact, as previously mentioned, the count expressly alleges that Welty was "negligent" in a number of specified ways. As also mentioned, the count contains an additional allegation that, "As a result of Welty's aforementioned actions and lack thereof, Welty misrepresented her level of expertise and/or the level of legal services she promised to deliver to Debra." The word "misrepresented" sounds in fraud, but it is clear that the first count does not adequately plead fraud. "The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." Billington v. Billington, 220 Conn. 212,217, 595 A.2d 1377 (1991). Assuming for purposes of argument that the third and fourth elements of a fraud action are adequately pleaded in the first count, the first and second elements are not. The first count does not identify any false representation made as a statement of fact. Equally important, it does not allege that the statement was untrue andknown to be so by its maker. Even on its own terms, the first count appears to be indulging in hindsight. The allegation is not that Welty knowingly represented her expertise or services at the time that representations were made. Rather, the allegation seems to be that, using the eventual results as a test, Welty's expertise and services were not as impressive after the fact as they appeared to be at the time she was retained. This seems to be another way of alleging that Welty was negligent. The allegation does not, in any event, rise to the level of fraud.
At argument, Criscio disclaimed reliance on any theory of fraud. She openly admitted that her first count sounds in negligence and argued with surprising vehemence that a claim of breach of fiduciary duty can arise from professional negligence alone. This argument misapprehends the nature and, as will be seen, purpose of the tort of breach of fiduciary duty. Because, however, attorneys unquestionably have fiduciary relationships with their clients, the question of whether professional negligence is a breach of that fiduciary relationship, actionable as such, is a complex one.
An attorney's fiduciary relationship with her clients is a defining characteristic of the profession. The Supreme Court observed long ago that, "There are few of the business relationships of life involving a higher trust and confidence than that of attorney and client." StocktonCT Page 5917v. Ford, 52 U.S (11 How.) 232, 247 (1850). The Rules of Professional Conduct articulate numerous aspects of this fiduciary relationship. Some extremely well-known fiduciary obligations are those of confidentiality (Rule 1.6), undivided loyalty (Rule 1.7), and the safekeeping of property (Rule 1.15). An attorney who violates one of these rules can plainly be sued for breach of fiduciary duty. Thus, to use an obvious example, an attorney who appropriates a client's funds to enrich herself, has committed a breach of fiduciary duty and can plainly be sued on that ground.
An attorney's breach of fiduciary duty may amount to fraud in a number of cases, but fraud is not necessarily the gist of the action. of course, an attorney who tells a client that the client's funds will be kept in a separate account when the attorney in fact intends to spend those funds at a casino is not only breaching her fiduciary duty but actively defrauding her client. The same is true of an attorney who uses confidential client information to enrich herself in the stock market. But what about an attorney who discloses an embarrassing confidence about a client's personal life at a social gathering? There is no fraud in such a disclosure, but there is an egregious breach of fiduciary duty just the same, and there is no reason in principle not to make it actionable as such.
The issue of competence raises a more intricate question. Rule 1.1 provides that, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation necessary for the representation." This sounds like the standard of care in a professional negligence case. SeeDean v. Hershowitz, 119 Conn. 398, 405-06, 177 A. 262 (1935). An attorney who is negligent in her representation of a client breaches her obligation under Rule 1.1 almost by definition.
But if professional negligence is a breach of Rule 1.1, does it necessarily follow that the same negligence is also a breach offiduciary responsibility and actionable as such? A treatise by Ronald Mallen and Jeffrey Smith answers this question in the negative. Mallen and Smith argue that, "Although the attorney-client relationship imposes fiduciary obligations, negligent conduct alone does not implicate a breach of those obligations." 2 RONALD E. MALLEN JEFFREY M. SMITH, LEGAL MALPRACTICE § 14.1.5, at 40 (4th ed. Supp. 1999). The proper approach, in their estimation, "is to recognize that an attorney's duties to a client include two obligations: (1) competent representation and (2) compliance with fiduciary obligations." Id. At least one court has found this analysis persuasive. Klemme v. Best, 941 S.W.2d 493,495-96 (Mo. 1997). CT Page 5918
Viewed in the context of the Rules of Professional Responsibility, the Mallen Smith analysis is problematic. The Rules of Professional Responsibility do not establish a hierarchy of professional obligations. The duty of competent representation is as important as, for example, the duty of keeping client confidences. Clients most assuredly expect their attorneys to be discrete and honest, but they also expect their attorneys to be competent, and Rule 1.1 makes this a professional obligation. In the context of an attorney-client relationship, a distinction between fiduciary and non-fiduciary obligations makes little sense.
In tort law, however, the distinction between fiduciary and non-fiduciary obligations does make sense, and it is to the law of torts — and remedies for torts — that we now turn. Criscio alleges breach of fiduciary duty for a very practical reason. As her prayer for relief states, she wishes to recover punitive damages and attorney's fees for this alleged breach. As mentioned, punitive damages and attorney's fees are sought with respect to the first count only. If the first count does not survive, neither does the prayer for relief in question. Thus, the first count and the prayer for relief are inextricably linked together. This turns out to be important, since actions that the courts historically have recognized as appropriate actions for breach of fiduciary duty have been actions based on factual allegations that, if proven, would at least potentially support damages going beyond the compensatory damages available in negligence. In fact, a sensible way of looking at the problem presented in this case is to ask whether the factual allegations of the first count — which, as described above, sound in negligence — would, if proven, potentially support the augmented remedies that Criscio seeks.
Our Supreme Court has recently explained that "the application of . . . traditional principles of fiduciary duty" has historically been confined to cases involving "fraud, self-dealing or conflict of interest." Murphyv. Wakelee, 247 Conn. 396, 400, 721 A.2d 1181 (1998). For this reason, "it is only when the `confidential relationship is shown together with suspicious circumstances, or where there is a transaction, contract, or transfer between persons in a confidential or fiduciary relationship, and where the dominant party is the beneficiary of the transaction, contract, or transfer,' that the burden shifts to the fiduciary to prove fair dealing." Id. at 405-06. (Citation omitted.)
Murphy did not address the issue of punitive damages. However, its reference to "suspicious circumstances" involving "fraud, self-dealing, or conflict of interest" helps explain why punitive damages may be awarded in breach of fiduciary cases. Punitive damages are awardable in such cases because the transgressions at issue in those cases involve CT Page 5919moral transgressions that transcend negligence. The lawyer who steals a client's funds, the lawyer who is disloyal to a client, and the lawyer who betrays the confidence of a client all engage in morally reprehensible activity. The assessment of punitive damages in such cases is morally appropriate. See O'Leary v. Industrial Park Corp. 211 Conn. 648,651, 560 A.2d 968 (1989). As Holmes, J. observed more than a century ago, the very notion of deceit is "drawn from the moral world, and in its popular sense distinctly imports wickedness. The doctrine of the common law with regard to it is generally stated in terms which are only consistent with actual guilt, and an actual guilty intent." OLIVER WENDELL HOLMES, THE COMMON LAW 132 (1948 ed.) (1881). The same can be said of the other breaches of fiduciary duty identified by Murphy.
The same cannot, however, be said of negligence. Negligence may well be a breach of an attorney's professional obligation, but it is not wicked. Interestingly, this point is often emphasized by attorneys in negligence cases in their summations to juries. It is a commonplace argument in that setting to observe that the party accused of negligence is doubtless a good person, but a good person who has made a mistake. The policy of the law in negligence cases is to award compensation butnot to impose punishment. Punishment is reserved for cases involving moral wrong.
With this analysis in mind, the first count and the prayer for relief as to that count can profitably be considered together. The first count alleges a breach of fiduciary duty, but the only breach identified is that of negligence. The prayer for relief as to that count seeks punitive damages and attorney's fees. In the absence of statutory authority, our law does not impose punitive damages and attorney's fees for negligent acts. The first count does not adequately allege a cause of action for breach of fiduciary duty, and both the first count of the counterclaim and the prayer for punitive damages and attorney's fees as to that count must be stricken.
The second question presented is whether the fourth count of the counterclaim, alleging breach of contract, should be stricken. The doctrinal issue here is whether a plaintiff may pursue the same underlying claim of breach of the prevailing professional standard of care in contract as well as tort. Unhappily, in the context of this case, this issue appears to be much ado about nothing. The issue typically arises in statute of limitation cases, where the plaintiff has missed the tort statute of limitations and seeks to take advantage of the longer statute of limitations period governing contract cases. At least one Connecticut case holds this approach to be legally permissible.Mac's Car City, Inc. v. DeNigris, 18 Conn. App. 525, 530, 559 A.2d 712,cert. denied, 212 Conn. 807, 563 A.2d 1356 (1989). In the present case, CT Page 5920 however, no statute of limitation defense appears. At argument, neither party was able to articulate any actual consequence that hangs in the balance. It appears that Criscio has added the contract count in a burst of exuberant pleading and that Welty has moved to strike it for the same reason that people climb Mount Everest — because it is there. But, maddening though this is, the issue has been presented, and, once presented, the judicial task is to decide it in a principled way.
Unhappily, principled decisionmaking has not been the hallmark of the treatment of this issue in the courts. Prosser succinctly observes that, "It would not be possible to reconcile the results of all cases." PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 655 (5th ed. 1984). As will be seen in a moment, this is certainly true of the Connecticut cases on the subject.
A helpful sketch of the common law background appears in POLLOCK'S LAW OF TORTS:
 In some cases [negligence] liability may co-exist with a liability on contract towards the same person, and arising (as regards the breach) out of the same facts. Where a man interferes voluntarily, he is bound to act in a reasonable and prudent manner according to the circumstances and opportunities of the case. And this duty is not affected by the fact, if so it be, that he is acting for reward, in other words, under a contract, and may be liable on the contract. The two duties are distinct, except so far as the same party cannot be compensated twice over for the same facts, once for the breach of contract and again for the wrong. Historically the liability in tort is older; and indeed it was by a special development of this view that the action of assumpsit, afterwards the common mode of enforcing simple contracts, was brought into use. `If a smith prick my horse with a nail, etc. I shall have my action upon the case against him, without any warranty by the smith to do it well. . . . For it is the duty of every artificer to exercise his art rightly and truly as he ought.' . . . For the obligation of many contracts is, by usage and the nature of the case, not to perform something absolutely, but to use all reasonable care and skill to perform it.
P. A. LANDON, POLLOCK'S LAW OF TORTS 334-35 (15th ed. 1951). AccordFlint Walling Mfg. Co. v. Beckett, 79 N.E. 503, 505-06 (Ind. 1906). It CT Page 5921 has thus been held both in the English Commonwealth and in many American states that where the common law duty of care is coextensive with that which arises as an implied term of the contract, a plaintiff may rely either concurrently or alternatively on liability in contract and tort, provided that there is no double recovery for the same factual claim.See Brown v. Boorman, 8 E.R. 1003, 1018-19 (H.L. 1844); Central Trust Co.v. Rafuse, [1986] 2 S.C.R. 147 (Can. 1986); Rawlings v. Apodaca,726 P.2d 565, 574-75 (Ariz. 1986); Parrish v. Clark, 145 So. 848, 850
(Fla. 1933); DCR Inc. v. Peak Alarm Co., 663 P.2d 433 (Utah 1983).
The Connecticut Supreme Court first suggested that tort and contract actions could arise from the same breach of duty in Stevens v. Yale,101 Conn. 683, 693, 127 A. 283 (1925). It elaborated on its earlier precedent, in what remains its most thorough discussion of the subject, in Dean v. Hershowitz, 119 Conn. 398, 177 A. 262 (1935). Dean rented a building from Hershowitz. The lease required that the floor of the front porch be repaired before occupancy began. This was not done, and Dean was subsequently injured when her foot went through the floor. She sued both for a breach of the lease and for negligence. The Supreme Court held that this dual attack was permissible. After exploring the historical relationship between contract and tort, it concluded that, "in such situations an action based upon the failure to use the required care and skill lies in tort and, if there is a contract, may also lie in contract." Id. at 406. While, as it happened, the contract in Dean
contained a specific provision requiring that a specific task be done, the Court's reasoning was not limited to the idiosyncratic situation before it. Rather, the Court explained, "the extent to which a liability in negligence may arise out of a contractual relationship is not confined to such situations." Id. Dean states, or seems to state, a general principal that, where there is a contract, common law actions alleging a failure to exercise due care maybe brought in tort, contract, or both.
The next Connecticut decision of note was an opinion by Wright, J., sitting as a Circuit Court Judge, in Camposano v. Claiborn, 2 Conn. Cir. Ct. 135, 196 A.2d 129 (1963). Camposano was a single-count action alleging breach of contract brought against a physician by a disappointed patient. It appears that the statute of limitation for negligence had run, so that no negligence claim was brought. Wright, J. held that the action in contract was properly brought, noting that, "No claim was made in the complaint, nor was there any offer of proof, to the effect that the defendant doctor did not perform a proper operation. The plaintiff relies solely upon a claim of a warranty or assurance that a certain result would be achieved." Id. at 136.
The holding of Camposano is not in conflict with Dean v. Hershowitz.CT Page 5922Dean involves a plaintiff's allegation of a defendant's failure to exercise due care in the performance of a contract. Its reasoning has no application to a plaintiff who does not allege a failure to exercise due care. Unhappily, Camposano, having succinctly dealt with the issue at hand, goes on to quote a New York case, Colvin v. Smith, 92 N.Y.S.2d 794
(App.Div. 1949), that involves a completely different issue. The problem in Colvin was one of issue preclusion. Colvin had sued Smith, a surgeon, for the negligent performance of a cataract operation and lost. She then brought an action for "breach of a special contract for the removal of the cataract." Id. at 795. The Appellate Division held that this was permissible. It reasoned that, "A doctor and his patient are at liberty to contract for a particular result, and if that result be not attained, the plaintiff has a cause of action for breach of contract. . . . This cause of action is entirely separate from malpractice, even though they both, as here, may arise out of the same transaction." Id.
Wright, J. incorporated this language of Colvin in his opinion inCamposano, 2 Conn. Cir. Ct. at 137. While this language doubtless reinforced the reasoning of Wright, J. — that he was really dealing with a contract case in Camposano — the language is potentially mischievous, since it can be misread to imply that breach of contract claims must necessarily involve contracts promising "a particular result." That, of course, is simply not true. Breach of contract claims alleging failure to exercise due care in the performance of a contract are brought with some regularity, and nothing in eitherColvin or Camposano holds to the contrary.
Two decades after Camposano, the Supreme Court revisited the subject in Stowe v. Smith, 184 Conn. 194, 441 A.2d 81 (1981). Stowe was an action by a disappointed heir to recover damages against his mother's attorney for misdrafting a will. The complaint was brought in a single count, alleging breach of contract. A-767 CONN. SUPREME CT. RECORDS 
BRIEFS (March Term 1981). The defendant attorney claimed that the action sounded only in tort. The Supreme Court rejected this argument, citingDean v. Hershowitz, stating that, "Unless a particular conflict between the rules of contract and tort requires otherwise, a plaintiff may choose to proceed in contract, tort, or both." 184 Conn. at 199. (Footnote omitted.)
The Supreme Court next visited the subject in Barnes v. Schlein,192 Conn. 732, 473 A.2d 1221 (1984). Barnes is a statute of limitation case. Barnes brought an action against a surgeon who had performed an operation on her. Like the complaint in Stowe, the complaint in Barnes
consisted of a single count. A-848 CONN. SUPREME CT. RECORDS BRIEFS (February Term 1984). The trial court held that the complaint was barred by the statute of limitations, and the Supreme Court affirmed. The task of the Supreme Court was to determine whether the single-count complaint CT Page 5923 sounded in negligence or tort. On review, the complaint was held to sound in negligence. The Court reasoned that, "A fair reading of the complaint reveals that the gravamen of the suit was the alleged failure by the defendant to exercise the requisite standard of care. Her complaint is absolutely barren of any allegation that the defendant breached any contractual agreement made with her." 192 Conn. at 735-36.
Nothing in Barnes is inconsistent with Dean or Stowe. Dean and Stowe,
hold that a plaintiff claiming a failure to exercise due care in the performance of a contract "may choose to proceed in contract, tort, or both." 184 Conn. at 199. The plaintiff in Barnes did not so choose. She chose instead to bring her claim in a single count. The task of the court in that situation was simply to read the count she brought to determine what its gravamen was. The Barnes court was simply not confronted with the multiple-count question presented here.
Barnes is the most recent Supreme Court decision touching this issue. However, four subsequent Appellate Court decisions must also be considered.
The first of these Appellate Court decisions, Shuster v. Buckley,5 Conn. App. 473, 500 A.2d 240 (1985), like Barnes, involved a statute of limitations problem with respect to a single-count complaint. The Appellate Court held that the complaint was "couched in the language of tort rather than contract," id. at 478, and consequently applied the negligence statute of limitations. The question of whether the plaintiff could bring concurrent counts of contract and tort did not arise. The Appellate Court simply construed the single count that had been pleaded in order to determine its gravamen.
DiMaggio v. Makover, 13 Conn. App. 321, 536 A.2d 595 (1988), was an action to recover damages for an allegedly improper psychological evaluation. The plaintiff claimed that she was an intended beneficiary of a contract between her employer and the defendant, a psychiatrist, to whom she had been referred for testing. The Appellate Court upheld the trial court's decision granting summary judgment to the defendant, reasoning that the plaintiff's complaint "sounds in malpractice." Id. at 322. The Appellate Court described the complaint as "absolutely barren of any allegation that the defendant breached any contractual duty owed to [the plaintiff]." Id. at 323.
DiMaggio, like Shuster, is a case involving a single-count complaint in which the court was required to construe the only count before it. The question of whether contract and tort counts could co-exist did not arise. DiMaggio quotes Barnes v. Schlein for the proposition that, "`the gravamen of the suit was the alleged failure to exercise the requisite CT Page 5924 standard of care.'" 13 Conn. App. at 323. This is certainly true as far as it goes. The statement is misleading only if taken out of context to imply that a breach of contract action cannot also allege a failure to exercise the requisite standard of care. That, as we have seen, would not be an accurate statement of the law.
Mac's Car City v. DeNigris, supra, also involved the judicial construction of a single count of a complaint in a statute of limitation case. The Appellate Court explained that Shuster "does not stand for the proposition that all claims against attorneys must necessarily be construed as tort claims." 18 Conn. App. at 530. It held that, "Although the complaint does not expressly use the word `contract,' a fair and reasonable construction of the [complaint's allegation that] `the defendants breached their representation agreement' clearly states a claim in contract." Id. at 529. As in Shuster, the question of whether the plaintiff could bring concurrent counts of contract and tort simply did not arise.
The Appellate Court's most recent decision involving this subject isRumbin v. Baez, 52 Conn. App. 487, 727 A.2d 744 (1999). Rumbin had been tested by Baez, a clinical psychologist, following a referral by the bureau of rehabilitation services. He claimed that, relying on Baez's erroneous report, the bureau denied him certain services. Rumbin's complaint against Baez contained separate counts alleging breach of contract and negligence, and the trial court struck both counts. On appeal, however, Rumbin chose not to challenge the striking of the negligence count. Id. at 488 n. 1. The Appellate Court held that the contract claim had been properly struck. It reasoned that the factual scenario was "similar to that in DiMaggio." Id. at 491. It reasoned that, "The plaintiff's substitute complaint contains no allegation of a breach of a contractual duty owed to him. There is no allegation that the parties contracted for a specific result. The claim is essentially a medical malpractice claim clothed in the language of contract. Therefore, we conclude that the trial court properly found that the plaintiff failed to state a breach of contract claim." Id. at 491-92.
Like DiMaggio, Rumbin appears to be a somewhat unusual case reaching what appears from the opinion to be a correct result with reasoning that is potentially misleading if taken out of context. There does not appear to have been a contract between the parties in Rumbin in the first place, so the holding of the case that there was no breach of contractual duty is eminently defensible. Moreover, while the plaintiff in Rumbin
originally pleaded separate counts of contract and negligence in his complaint, only the contract count was before the Appellate Court, so the Appellate Court was not presented with the question of whether such counts could coexist. As was the case in DiMaggio, however, Rumbin
CT Page 5925 becomes more problematic in its suggestion that a breach of contract claim must necessarily involve a "contract for a specific result."52 Conn. App. at 491. That proposition, if true, is a surprising one, and exceedingly difficult to reconcile with Supreme Court precedent, such asDean v. Hershowitz and Stowe v. Smith, holding that a breach of contract action can be founded on an alleged failure to exercise due care. Rumbin,
like the Appellate Court precedent before it, cites neither Dean norStowe and does not consider the problem presented in this case. Consequently, Rumbin is best read as leaving preexisting Supreme Court precedent intact.
For the reasons stated above, the fourth count adequately states a cause of action for breach of contract.
The motion to strike is granted as to the first count and the prayer for punitive damages and attorney's fees directed to that count. The motion is denied as to fourth count.
Jon C. Blue Judge of the Superior Court