C. JOHN SATTI, JR. *v.* ROBERT H. KOZEK,
ADMINISTRATOR (ESTATE OF
CHARLES SATTI)

C. ROBERT SATTI, SR. *v.* ROBERT H. KOZEK,
ADMINISTRATOR (ESTATE OF
CHARLES SATTI)
(AC 18733)

Foti, Hennessy and Pellegrino, Js.

Argued April 4—officially released July 18, 2000

*Peter W. Rotella,* for the appellant (plaintiff in the first case).

*C. Robert Satti, Sr.,* pro se, the appellant (plaintiff in the second case).

*C. George Kanabis,* with whom, on the brief, was *Renee Marie Houle,* for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiffs[1] appeal from the judgment of the trial court denying their petition to remove the defendant, Robert H. Kozek, as administrator of the estate of Charles Satti, and modifying, in part, the defendant's final account of legal fees, accounting fees and administrative fees. The plaintiffs claim that the trial court improperly (1) failed to require the defendant, as a fiduciary, to sustain his burden of proof by clear and convincing evidence, (2) rendered judgment for the defendant, (3) failed to reduce sufficiently the amounts of certain fees charged in the defendant's final accounting, (4) refused to order an allocation of and accounting for funds and interest generated by the transfer of spe-

---

[1] The plaintiffs are C. John Satti, Jr., and C. Robert Satti, Sr., descendants of the testator.

cifically devised property, (5) declined to order repayment of money wrongfully paid from the estate fund and (6) refused to remove the defendant as fiduciary. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. This action involves the disposition of the estate of Charles Satti, who died testate in 1936. Satti was survived by his widow, Maria, and seven children, Andrew, Louis, C. John, Emma, Theresa, Margaret and Mary Curtin. The original inventory of the estate included a grocery business, a savings account and certain properties located in New London and Waterford. Satti's will granted a life estate in all of his property to his widow, who died in 1953. The properties located at Bank and Belden Streets in New London were specifically devised to the three sons, while the residue of the estate was devised to all seven children equally.

Charles Satti's eldest son, Andrew, was appointed executor of the estate in 1936, and served as executor until his death in 1977. In 1982, Satti's granddaughter asked the defendant to serve as administrator of the estate. The defendant agreed and was appointed administrator of the estate in September of 1982.

By 1986, the defendant had disposed of all of the properties except the property located at Montauk Avenue in New London. Largely due to the actions of the heirs of the estate, the defendant was unable to sell the Montauk Avenue property. The issue of ownership of the Montauk Avenue property was eventually resolved through a settlement agreement among the heirs. By December, 1995, the defendant was ordered by the Probate Court to file a final account, covering the time period of 1982 through 1995. The Probate Court approved, in part, the defendant's final accounting. The plaintiffs brought separate appeals to the Superior Court from the decision of the Probate Court, challeng-

ing the defendant's final accounting. The cases were tried together to the Superior Court, which held a trial de novo because no record was made before the Probate Court. The plaintiffs now appeal from the judgment of the Superior Court.

I

The plaintiffs first claim that the trial court improperly failed to require the defendant to sustain his burden of proof by clear and convincing evidence. We disagree with the plaintiffs.

The issue of whether the court held the parties to the proper standard of proof is a question of law. When "issues in [an] appeal concern questions of law, this court reviews such claims de novo." *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 592, 715 A.2d 807 (1998).

In certain instances where it is alleged that a fiduciary has breached his duty, the burden of proof shifts such that the fiduciary has the burden of proving fair dealing by clear and convincing evidence. *Murphy* v. *Wakelee*, 247 Conn. 396, 400, 721 A.2d 1181 (1998). Such burden shifting occurs in cases involving claims of fraud, self-dealing or conflict of interest. Id. In their appeal to the Superior Court, the plaintiffs claimed that the defendant's interests conflicted with those of the estate, and thus, according to *Murphy*, the defendant was required to prove fair dealing by clear and convincing evidence.

The plaintiffs claim that the court failed to require the defendant to prove fair dealing by clear and convincing evidence. We disagree with the plaintiffs because we find nothing in the record to suggest that the court held the defendant to a lesser standard. In its decision, the court clearly noted that the defendant was a fiduciary to the estate. In finding that the defendant dealt fairly with the heirs of the estate, the court noted that "the

fiduciary's performance was, by any applicable standard of proof, well within the range of acceptability." Clearly, the court acknowledged that the defendant's fiduciary performance was evaluated according to a higher standard of proof, and our review of the record convinces us that the court properly held the defendant to the appropriate standard.

II

The plaintiffs next claim that the court improperly rendered judgment for the defendant. We disagree.

In their appeal to the Superior Court, the plaintiffs challenged (1) the court's decision denying their request to remove the defendant as administrator and (2) the defendant's final accounting of the administration expenses. The Superior Court denied the petition to remove the defendant and approved the defendant's final accounting, subject to some modifications.

The plaintiffs assert that, because the court ordered some modifications of the final accounting, they were the "prevailing" parties and therefore it was improper for the court to have rendered judgment for the defendant. In support of this claim, the plaintiffs cite *McQueeney* v. *Norcross*, 75 Conn. 381, 53 A. 780 (1903), which addressed the issue of which party was the prevailing party for the purposes of having appellate costs taxed. According to the *McQueeney* court, the reviewing court's finding of *any* error in the judgment of the trial court is sufficient to make the appellant the prevailing party. See id., 382 n.1.

The plaintiffs' reliance on *McQueeney* is misplaced. While the present case involves an appeal from a decision of the Probate Court, the trial court did not act as an appellate court reviewing the decision of the Probate Court. Rather, the trial court sat as a Probate Court de novo and its judgment was rendered without regard to

the decision made by the Probate Court. See *Prince* v. *Sheffield*, 158 Conn. 286, 294, 259 A.2d 621 (1969); see also General Statutes § 45a-186; *Andrews* v. *Gorby*, 237 Conn. 12, 16, 675 A.2d 449 (1996) (where no record made before Probate Court, absence of record requires trial de novo). Thus, the trial court did not find, and was not asked to review, any error that may have been committed by the Probate Court. The court's judgment for the defendant was an entirely independent determination.

While the plaintiffs may have prevailed in having a portion of the final account modified, the court approved much of the account and refused the plaintiffs' petition to remove the defendant as administrator. Because it appears that the defendant did prevail as to the bulk of the plaintiffs' claims, it was not improper for the court, sitting as a Probate Court de novo, to render judgment for the defendant.

### III

The plaintiffs next claim that the court failed to reduce sufficiently the attorney's, accounting and administrator's fees charged to the estate. We disagree.

"Our analysis begins with the appropriate standard of review. We have long held that a finding of fact is reversed only when it is clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 345–46, 736 A.2d 824 (1999).

Here, the record contains ample evidence to support the finding of the court. The court heard ten days of testimony, including that of an expert witness, and reviewed voluminous documents, including the administrator's billing records. Clearly, the trial court was in the best position to evaluate this evidence, and "[w]e will not substitute our evaluation of the evidence for that of the trial court . . . ." (Internal quotation marks omitted.) *Carol Management Corp.* v. *Board of Tax Review*, 228 Conn. 23, 38, 633 A.2d 1368 (1993).

## IV

The plaintiffs claim next that the court failed to order a proper allocation of and accounting for funds and interest realized from the transfers of specifically devised property. We disagree.

This issue relates to the properties located at Bank and Belden Streets, which were specifically devised to Charles Satti's sons, subject to his widow's life estate. When the properties were sold, the defendant improperly commingled the proceeds from those sales with the general funds of the estate. While the defendant eventually recognized this error and disbursed the sale proceeds to the respective sons, the defendant did not credit the sons with interest earned on the money while it was in the estate's general account.

In evaluating the plaintiffs' claim, the court noted that the proceeds from the sales of the Bank and Belden Streets properties included gains from the sale of another Belden Street property that had been acquired *after* Satti's will was executed. The sons, therefore, had received funds from property that had not been specifically devised to them.

After considering the relative values of the after-acquired Belden Street property proceeds and the unpaid interest that had accumulated in the estate's

general account, the court found that the two amounts were roughly equal. Finding that the after-acquired property proceeds had already enriched the sons in an amount equal to the interest that was owed them, the court determined that the figures offset one another. Accordingly, the court declined to order the payment of the interest to the sons. Again, the court was in the best position to evaluate this evidence, and our own review of the record leads us to conclude that the result was reached reasonably.

## V

The plaintiffs claim next that the court improperly failed to order repayment of amounts wrongfully paid from estate funds. This claim deals with the defendant's use of estate funds to pay taxes, interest, penalties and lien fees in the amount of $3344, which were generated by the defendant's own negligence. The defendant does not dispute that he improperly used estate assets to pay these fees. He claims, however, that the estate was properly credited the $3344 it was owed. As we noted previously, we will overturn a trial court's factual finding only when it is clearly erroneous. The court, in deciding the appropriate amount of legal, administrative and accounting fees, noted that some of the defendant's charges stemmed from work made necessary through the errors of the defendant or his agents. The court considered those errors and reduced the compensation in the defendant's accounting by an appropriate amount. We find nothing in the record to suggest that the court failed to account for the $3344 that was improperly used by the defendant to pay estate fees created by his own error.

## VI

The plaintiffs final claim is that the court improperly refused to remove the defendant as fiduciary. We find the plaintiffs' claim to be unavailing.

"Whether grounds exist for an executor's removal is a question addressed to the sound discretion of the Probate Court. . . . Our task, then, is to determine whether the trial court abused its discretion in refusing to remove the defendant as executor of the . . . estate." (Citations omitted.) *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 65, 519 A.2d 1185 (1987). "Removal of an executor is an extraordinary remedy designed to protect against harm caused by the continuing depletion or mismanagement of an estate. . . . In the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past misconduct." (Citations omitted.) Id., 66–67.

In its decision not to remove the defendant as administrator, the court found that, while the work done by the defendant was not correct in every respect, his performance as administrator was well within the range of acceptability. The court further noted that "it would serve no purpose but economic waste to remove the fiduciary at this time" and that removal "is not in the best interest of the heirs of the estate . . . ." Given the age and complexity of this estate, there is sufficient evidence in the record to support the court's conclusion that it would be economically wasteful to appoint a new administrator at this time. Furthermore, there is no evidence in the record to suggest that the defendant presents a continuing harm to the interests of the estate.

The judgment is affirmed.

In this opinion the other judges concurred.