## ATLANTIC NATIONAL TRUST, LLC *v.* WILLIAM F. VAN ECK ET AL.
### (AC 25547)

Lavery, C. J., and Foti and Schaller, Js.

Argued January 19—officially released May 24, 2005

*Patrick W. Boatman,* with whom, on the brief, was *John H. Grasso,* for the appellants (named defendant et al.).

*Frederic S. Ury,* with whom, on the brief, was *Deborah M. Garskof,* for the appellee (plaintiff).

### Opinion

LAVERY, C. J. In this foreclosure action, the defendants William F. Van Eck (Van Eck) and Gertrude J. Vermande Van Eck (Vermande)[1] appeal from the judg-

---

[1] Johanna A. Winklemann and the Internal Revenue Service of the United States were additional defendants in the underlying action, but are not parties to this appeal. We therefore refer in this opinion to Van Eck and Vermande as the defendants.

ment of foreclosure by sale rendered by the trial court in favor of the plaintiff, Atlantic National Trust, LLC. On appeal, the defendants claim that the court improperly found that $65,000 of the defendants' loan was applied properly to the debts of their son, Jan Van Eck.[2] We affirm the judgment of the trial court.

The following facts, as found by the court in its memorandum of decision, are pertinent to our review. "On April 24, 1985, [the Branford Savings Bank (bank)][3] loaned $170,000 to Plastic Ribbon Corporation (Plastic), which was owned at least in part by the defendants' son, Jan Van Eck. The loan was guaranteed by Jan Van Eck and by a company known as Helldica, Inc. Repayment of the guarantee was secured by a pledge by Helldica of seven items of its equipment, which were used in Plastic's business operation.

"By the summer of 1986, Plastic was in default on its loan. Over the next several months, the defendants and Jan Van Eck began discussions with the bank about the possibility of refinancing the defendants' property at 300 Main Street in East Haven. The purpose of the refinancing was to pay off the defendants' loans on the Main Street property and to pay down a portion of Plastic's debt to the bank.

"After some negotiations with the bank, the defendants and the bank agreed that the bank would loan the defendants $350,000 on their property and that $65,000 of that sum would be used to reduce the obligation of Plastic and/or a personal obligation of Jan Van Eck. The defendants suggested that as part of the transaction that they should receive an assignment of the

---

[2] The defendants also claim that the court improperly awarded attorney's fees to the plaintiff because the court made an erroneous finding that the $65,000 payment was credited properly. As we have concluded that the court made a proper finding, we need not review this claim.

[3] The plaintiff is the current holder of the mortgage and the proper party to bring the foreclosure action.

security interest then held by the bank on Helldica's equipment. The bank did not agree to this request. The closing took place on February 20, 1987 . . . . The closing statement, signed by the defendants, shows how the $350,000 proceeds from the mortgage were distributed: $209,882.89 was used to pay off expenses and encumbrances on the property, $65,000 was to be paid to the bank and the balance of $75,117.11 was paid to the defendants. The $65,000 was sent to attorney Richard Shapiro, the bank's closing attorney by [the defendants' attorney. The attorney's] letter stated that the money was to be applied to the debt of Jan Van Eck to the bank, and that it was to be held in escrow pending the recorded assignment of the interest in Helldica's machinery and the bank's acknowledgment that it has no claims against the defendants except for the $350,000 note and mortgage. The bank did not agree to give either the assignment or release.

"On April 7, 1987, Mr. Shapiro wrote [to the defendants' new attorney, advising him] that the $65,000 was still being held in his trust account and requested that [he] confirm with his clients that the funds may be released to the bank. On April 14, 1987, the defendants signed an 'Authorization' authorizing Mr. Shapiro to release $65,000 to the bank. On April 16, 1987, Mr. Shapiro sent his check to the bank for $65,000, which referenced Plastic Ribbon, payable to the bank. The bank then applied $61,420.56 to the Plastic loan and $3579.44 to a personal loan of Jan Van Eck. The letters and the authorization made no reference to the earlier request that the defendants were to receive an assignment of the security interest on Helldica's machinery and a release from the bank."

From February 20, 1987, until December, 1999, the defendants made installment payments on their $350,000 obligation and received yearly statements from the bank informing them of changes in their inter-

est rate and the amount of principal due on the loan. The defendants subsequently defaulted on their loan. The plaintiff demanded that the default be cured and, when it was not, commenced the underlying foreclosure action.

At trial, the defendants admitted to execution of the note and mortgage, but disputed the amount due and owing, arguing that the $65,000 was applied incorrectly to the loans of their son and should have been credited against their obligation. The court found that the money had been applied properly to the loans of their son and his corporation. Accordingly, the court found that the amount of the debt as of October 15, 2003, was $261,948.36, and not $35,783.95 as the defendants claimed. The court also awarded the plaintiff attorney's fees. This appeal followed.

The defendants claim that the court improperly found that the $65,000 properly was applied to the debts of their son, Jan Van Eck, and his corporation. Specifically, they argue that (1) there was insufficient evidence for the court to find that there was a "meeting of the minds" between the defendants and the bank regarding the application of the $65,000 to the debts of another and to conclude that the defendants authorized this application of the money, (2) the court improperly stated that the defendants had the burden of proof on this issue and that the court improperly found that they did not meet this burden, and (3) the statute of frauds was a barrier to the application of the money to the debts of Jan Van Eck, as found by the court. We disagree.

I

The defendants maintain that the court improperly found that there was a "meeting of the minds" between the defendants and the bank regarding the application of the $65,000 to the debts of Jan Van Eck and that the

defendants authorized this application of the money. We disagree.

We begin by setting forth our standard of review. "We review the court's findings of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Citations omitted; internal quotation marks omitted.) *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 77 Conn. App. 462, 471–72, 823 A.2d 438 (2003).

The court found that "[t]he defendants' basic claim is that the application of the $65,000 to reduce the debts of Plastic and their son was conditioned upon their receiving an assignment of the security interest in the machinery and a release from the bank, that they did not receive these documents, and the bank wrongfully used these funds to reduce Plastic's loan rather than using the funds as a repayment on the $350,000 loan. The court finds that the bank did not agree to those conditions, that the defendants released the $65,000 to the bank without any conditions, and that they knew and agreed that the funds were going to be applied to Plastic's and their son's loans. From 1987 until the [defendants'] special defenses were filed on July 1, 2003, the defendants did not mention the assignment or release even though they knew that the $65,000 had not been applied to the $350,000 obligation. They raised no questions or objections when very shortly after February 20, 1987, they began receiving documents from the bank that reflected a principal balance due on the loan

that obviously did not credit the $65,000. The various exhibits in evidence demonstrate that in 1987, both defendants were quite capable of managing their business affairs, and there is no claim by the defendants that they were not capable."

The defendants claim that "[i]n the absence of any writing of the [d]efendants or any agent of the [d]efendants whereby the mon[eys] are directed to be applied other than against their own single obligation, and in the absence of any testimony claiming that a verbal authorization to apply the mon[eys] for that purpose was received, it must be error for the trial court to have implicitly concluded that such authorization must have somehow been communicated notwithstanding the absence of any proof that such authorization was communicated, whether in writing or orally." The defendants rely on *Fortier* v. *Newington Group, Inc.*, 30 Conn. App. 505, 620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993), for the proposition that "[i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." (Citations omitted; internal quotation marks omitted.) Id., 510.

We agree with the plaintiff that "[t]he making of a contract does not depend upon the secret intention of a party . . . but upon the intention manifested by his [or her] words or acts, and on these the other party has a right to proceed." (Internal quotation marks omitted.) *Garrison* v. *Garrison*, 190 Conn. 173, 175, 460 A.2d 945 (1983). The defendants maintain that there was no evidence of either oral or written agreements regarding the use of these funds. As noted by the defendants, their intention "need not be expressed in writing or in

any technical or formal words, nor delivered in any particular manner, but will be sufficient if the intention is manifest and comes to the knowledge of the other party . . . ." 60 Am. Jur. 2d, Payment § 98 (1987). We conclude that the defendants' actions illustrated their intent, and the court's implicit finding that there was a meeting of the minds was supported by the evidence. As found by the court, there were never any discussions between the bank and the defendants other than that the $65,000 was to be applied to the son's loan obligations. Although the defendants argue that the money could be applied in this manner only if the proper releases and assignments of security interests had been executed, the bank never agreed to these conditions. In addition, when the money was released, it was given with an unconditional authorization that did not detail any other purpose for the money. The bank was free to follow the expressed wishes of the defendants that the money be applied to their son's loan obligations.

Additional facts support the court's finding that the defendants knew and agreed that the funds were going to be applied to loans of Plastic and their son. The defendants received monthly and annual documents from the bank indicating the principal balance due on the mortgage. This sum clearly did not reflect a $65,000 payment. Vermande also filed personal financial statements on behalf of the defendants in 1994, 1995, 1996 and 1997, which included the outstanding principal balance owed to the bank, and also did not indicate the reduction the defendants claim should have been made. Vermande claimed at trial that she blindly accepted the figures given in the bank document and did not notice the missing money. The court found that Vermande was not a credible witness. In fact, the defendants did not object to the payment of their son's debts until this foreclosure proceeding commenced in 2003. The defendants maintain that this silence cannot be used as evi-

dence of ratification when there was no proof of prior authorization. As we have concluded that the court properly found that there was authorization, the defendants' silence over the course of ten years is further evidence of their intent that the money be used to reduce their son's debts.

The defendants rely on the 2 Restatement (Second), Contracts § 259 (1981), for the proposition that unless no designation is made, a debtor, not the creditor, is the party that determines the loan to which a payment is to be applied. The defendants maintain that because they only had one outstanding loan, the bank could not have applied the money elsewhere. They also cite *Gosnell* v. *Independent Service Finance, Inc.*, 28 Ark. App. 334, 774 S.W.2d 430 (1989), for the proposition that a creditor cannot appropriate a payment to an obligation for which the debtor is not liable. We agree with the plaintiff that these sources are not relevant. The bank in this case did not make a unilateral decision to apply the defendant's payment to their son's loans. Instead, as found by the court and supported by the evidence, the defendants authorized the bank to make the payment toward Jan Van Eck's obligations in the manner that it did.

## II

The defendants also argue that the court improperly stated that the defendants had the burden of proof on the issue of whether the bank misapplied the $65,000 payment.[4] They maintain that it was the plaintiff's burden to prove that the money was applied properly. We disagree.

We first set forth our standard of review. When a party contests the burden of proof applied by the court,

---

[4] The defendants also argue that the court improperly found that they did not meet this burden. As explained in part I A, the court properly found that that the bank correctly applied the money to their son's obligations.

the standard of review is de novo because the matter is a question of law. *Satti* v. *Kozek*, 58 Conn. App. 768, 771, 755 A.2d 333, cert. denied, 254 Conn. 928, 761 A.2d 755 (2000).

Practice Book § 10-50 governs the pleading of special defenses and provides in relevant part: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus . . . payment (even though nonpayment is alleged by the plaintiff) . . . must be specially pleaded . . . ." The burden of pleading and proving the special defense of payment rests on the defendant. See *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 606 n.10, 717 A.2d 713 (1998). The defendants maintain that this concept of payment is not applicable in this situation because payment refers to proof of tender of money to the obligee, not allocation of those moneys by the obligee. We are not persuaded by this argument. The defendants' special defenses allege that they made an additional payment to the bank in an effort to disprove the plaintiff's allegations of nonpayment. The plaintiff countered by arguing that the money was not a payment of the defendants' obligations, but rather a distribution of the original loan to the son's obligations as authorized by the defendants. Therefore, the special defense was in substance a claim of payment, and the court properly placed the burden of proof on the defendants.

III

General Statutes § 52-550 (a) provides in relevant part: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party,

or the agent of the party, to be charged . . . (2) against any person upon any special promise to answer for the debt, default or miscarriage of another . . . ." The defendants argue that this statute of frauds was a barrier to the application of the money, as found by the court.[5] We disagree.

Section 52-550 (a) (2) requires a signed writing before a court can uphold a cause of action demanding payment for the debt of another. This is not, however, an action to enforce the defendants' promise to pay part of the debt of their son. Instead, the plaintiff filed its complaint on the basis of the defendants' default on their own mortgage loan. Therefore, the statute of frauds did not apply. Additionally, the contract governing the son's debt had been fully performed, and "[u]nder Connecticut law, it has long been held that full performance by both parties to an oral contract . . . will operate to remove a contract from the provisions of the statute of frauds . . . ." (Citation omitted.) *Caulkins* v. *Petrillo*, 200 Conn. 713, 716 n.5, 513 A.2d 43 (1986), citing *Breen* v. *Phelps*, 186 Conn. 86, 439 A.2d 1066 (1982); *Rutt* v. *Roche*, 138 Conn. 605, 87 A.2d 805 (1952); 1 Restatement (Second), Contracts §§ 128 through 130, 145 (1981).

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.

---

[5] We note that although the defendants made this argument to the court in their trial brief, the court did not address this issue in its memorandum of decision.