## CONN ACOUSTICS, INC. *v.* XHEMA CONSTRUCTION, INC.
### (AC 25088)

Lavery, C. J., and Flynn and Berdon, Js.

Argued January 6—officially released May 3, 2005

*John F. Conway*, for the appellant (defendant).

*Thomas M. Cassone*, with whom, on the brief, were *Robert S. Bello* and *Lawrence M. Lapine*, for the appellee (plaintiff).

FLYNN, J. The defendant, Xhema Construction, Inc., appeals from the judgment of the trial court awarding the plaintiff, Conn Acoustics, Inc., $39,093 in damages, plus costs and interest, on its breach of contract complaint. The court also found in favor of the plaintiff on the defendant's counterclaim. On appeal, the defendant claims that the court improperly applied the parol evidence rule to exclude evidence of the circumstances surrounding the making of the parties' agreement and concluded that the parties' unsigned written proposal, with change orders, was a fully integrated agreement without admitting evidence as to the intent of the parties. We agree and remand the case for further evidentiary proceedings.

The record reveals the following facts. The defendant, a general contractor, hired the plaintiff, and several other subcontractors, to perform work in connection with the installation of an indoor lap pool in the basement of a Greenwich home. Problems arose with the vapor barrier over the pool because the taping of holes in the barrier was not completed properly. In contracting with the defendant, the plaintiff had sent by facsimile a proposal concerning the work that it was being hired to complete. The parties agree that the plaintiff was to install walls and a ceiling in the basement of a home, which would house an indoor lap pool, beneath a metal deck. The parties disagree as to

whether the two page proposal for $66,628, dated May 14, 1998, submitted by the plaintiff to the trial court as exhibit one, along with two change orders, accurately stated the complete terms of the parties' contract. Of particular significance is the exclusion of "taping" that was contained on page two of this proposal, as well as the provision that stated that the proposal was based on "various conversations and design changes." No signed copy of this proposal or any contract was submitted into evidence by either party, and the plaintiff stated that a signed copy could not be located in its files. The defendant was not able to locate any record of any contract or proposal concerning this entire project.

In addition to the proposal submitted as exhibit one, the plaintiff submitted two change orders to the court. The first change order, dated August 19, 1998, and referencing project number W-2544, stated that the original contract sum was $66,628. It then listed three changes to the contract totaling $33,936. The total revised contract amount was stated to be $100,564. The first change order was signed at the bottom by representatives of both parties. The second change order, dated March 26, 1999, also referencing project number W-2544, added two more changes that amounted to $3329. Unlike the first change order, this change order did not state the original contract price or the new total, but it was signed at the bottom by representatives of both parties.

The plaintiff also tendered, as exhibit four, a notarized document entitled "application and certificate for payment," dated November 24, 1998, which stated (1) the original contract sum of $66,628, (2) the net change orders of $33,936, (3) the contract sum as of that date of $100,564, (4) the total completed and stored to date of $72,000, (5) a 10 percent retainage amount of $7200, (6) the total earned, less retainage, of $64,800, (7) less previous certificates for payment of $48,780.90, (8) the

current payment due of $16,019.10 and (9) the balance to finish, plus retainage, of $35,764. The document was signed by the plaintiff and a notary public. Further, the document notes an approval of a payment of $16,019.10, evidenced by the initials of Pierre Georgetti, an employee of the defendant and the project manager for the lap pool project, on behalf of the defendant on December 4, 1996.

The final "application and certificate for payment," dated March 30, 1999, was submitted as exhibit five. Similar in many respects to the November 24, 1998 application, it stated (1) the original contract sum of $66,628, (2) the net change orders of $37,265, (3) the contract sum as of that date of $103,893, (4) the total completed and stored to date of $103,893, (5) a 10 percent retainage amount of $10,389.30, (6) the total earned, less retainage, of $93,503.70, (7) less previous certificates for payment of $64,800, (8) the current payment due of $28,703.70 and (9) the balance to finish, plus a retainage of $10,389.30. The document was signed only by the plaintiff and a notary, but payment was neither tendered nor approved by the defendant pursuant to this application.

The plaintiff filed suit seeking to recoup the balance of $39,093 allegedly due on the contract. The defendant, although acknowledging the existence of "a contract" in its answer, denied that it owed the plaintiff this amount. Additionally, the defendant filed a counterclaim alleging that it suffered damages because of the plaintiff's failure to perform its work in a good and workmanlike manner. On the basis of this evidence, the court found that the May 14, 1998 proposal, in combination with the two change orders, embodied the entire agreement of the parties, and it rendered judgment in favor of the plaintiff on both its complaint and on the defendant's counterclaim.

The defendant submits that our standard of review on its claim of an improper application of the parol evidence rule is plenary. The plaintiff argues that it is a mixed standard of review, clearly erroneous as to the factual issue of the intent of the parties and plenary as to whether the court properly applied the parol evidence rule. We agree with the defendant.

"Ordinarily, [o]n appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. . . . Because the parol evidence rule is not an exclusionary rule of evidence, however, but a rule of substantive contract law . . . the [defendant's] claim involves a question of law to which we afford plenary review." (Internal quotation marks omitted.) *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 609, 849 A.2d 804 (2004).

"The parol evidence rule does not apply . . . if the written contract is not completely integrated." (Internal quotation marks omitted.) *Benvenuti Oil Co.* v. *Foss Consultants, Inc.*, 64 Conn. App. 723, 727, 781 A.2d 435 (2001). As a threshold matter, therefore, a court *must conduct* an inquiry and take evidence as to whether there is an integrated agreement. See *Suburban Sanitation Service, Inc.* v. *Millstein*, 19 Conn. App. 283, 286–87, 562 A.2d 551 (1989). "If the evidence . . . does not indicate that the writing is intended as an integration, i.e., 'a final expression of one or more terms of an agreement'; 2 Restatement (Second), Contracts § 209 (1) [1981]; then 'the agreement is said to be "unintegrated," and the parol evidence rule does not apply.' E. Farnsworth, Contracts [1982] § 7.3, p. 452. Whether the parties intended to integrate their negotiations in a writing is a question of fact for the court. *Jarvis* v. *Cunliffe*, 140 Conn. 297, 299, 99 A.2d 126 (1953); 2 Restatement (Second), [supra] § 210 (3)." *Associated Catalog Mer-*

*chandisers, Inc.* v. *Chagnon,* 210 Conn. 734, 740, 557 A.2d 525 (1989).

The intent of the parties determines whether the written agreement was the final repository of any oral agreements. If the court determines that the parties intended the writing to be an integrated agreement, the oral agreements are not considered when determining the contractual obligations of the parties. See id., 739–40. "Whether a writing is a complete integration of an agreement, the final repository of the oral agreements and dealings between the parties depends on their intention, evidence as to which is sought in the conduct and language of the parties and the surrounding circumstances. If the evidence leads to the conclusion that the parties intended the [writing] to contain the whole agreement, evidence of oral agreements is excluded, that is, excluded from consideration in the determination of the rights and obligations of the litigants, even though it is admitted on the issue of their intention. . . . Whether there is a complete integrated agreement is to be determined by the court as a question preliminary . . . to application of the parol evidence rule." (Citations omitted; internal quotation marks omitted.) *Suburban Sanitation Service, Inc.* v. *Millstein,* supra, 19 Conn. App. 286–87.

The trial court accepted the May 14, 1998 unsigned proposal, with the change orders, as evidence of the terms of the contract. The court made no explicit findings as to whether the parties *intended* those documents to be their fully integrated agreement. The defendant claims on appeal that the court not only failed to make findings as to whether the parties intended those documents to be their fully integrated agreement, but it also forbade the admission of any testimony on the issue of intent, improperly relying on the parol evidence rule. We agree.

Despite several attempts by the defendant's counsel to introduce testimony as to the intent of the parties, the court repeatedly sustained the plaintiff's objection on the basis of the parol evidence rule.[1] When the defendant's counsel attempted to question Georgetti about

---

[1] The relevant testimony can be summed up as follows. At trial, the plaintiff first offered the testimony of Peter LeBlanc, its president. LeBlanc testified that he maintained business records in the ordinary course of business and that exhibit one was the plaintiff's standard proposal sheet with the specifics of this particular job spelled out and that, despite a diligent search, he could not find a signed original of this proposal. LeBlanc also testified that he did not prepare the proposal or the change orders personally, but that the signatures on the change orders were those of his deceased partner, Richard Wade, and the project manager for the defendant, Georgetti. On cross-examination, LeBlanc admitted that he had no responsibility for negotiating the terms of the contract between the plaintiff and the defendant, and that his deceased partner had had that responsibility.

The defendant called Georgetti as one of its witnesses. Georgetti testified that he was the part-time project manager on the lap pool project and that although he was not responsible for negotiating the terms of the contract between the parties, he did have discussions with Wade concerning the contract and what it entailed, and he did have the authority to sign the change orders and bind the defendant thereto. When questioned regarding plaintiff's exhibit one, the two page proposal, Georgetti testified that he did not sign that document and, when the defendant's counsel attempted to question Georgetti about the terms of the contract, the plaintiff objected specifically on the ground of parol evidence. In response to the objection, the defendant's counsel argued that the unsigned written proposal was not a binding contract, was not accepted by his client and that he was trying to establish the terms of the contract as agreed to by the parties. The court sustained that objection. Georgetti then testified that he had informed Wade that the defendant did agree to certain terms and conditions pursuant to which the plaintiff could begin its work on the lap pool project, and that some of those terms and conditions were contained in the unsigned proposal, but that there were additional oral agreements that he and Wade had made. When the defendant's counsel questioned Georgetti as to whether those oral agreements concerned the patching of the vapor barrier, the plaintiff again objected on the ground of the parol evidence rule. The defendant's counsel reiterated that his client did not admit that the two page unsigned proposal was the parties' contract and that even if it were the contract, the references to "various conversations" in the proposal proved that it was not fully integrated. Further, the defendant's counsel reminded the court that this document was admitted only as a business record and not as the contract of the parties. The court then stated that it believed that whether the two page proposal was the contract of the parties was "one of the

the terms of the contract, the plaintiff objected specifically on the ground of parol evidence. In response to the objection, the defendant's counsel argued that the unsigned written proposal was not a binding contract, that it was not accepted by his client and that he was trying to establish the terms of the contract as agreed to by the parties. The court sustained that objection. Georgetti then testified that he had informed Richard Wade, a partner in Conn Acoustics, Inc., who is now deceased, that the defendant did agree to certain terms and conditions contained in the unsigned proposal, but that there were additional oral agreements that he and Wade had made. When the defendant's counsel questioned Georgetti as to what was included in those oral agreements, the plaintiff again objected on the ground of the parol evidence rule. The defendant's counsel reiterated that his client did not admit that the two page unsigned proposal was the parties' contract and that even if it were the contract, the references to "various conversations" in the proposal proved that it was not fully integrated.

On the second day of trial, the defendant's counsel again asked to be heard on the issue of parol evidence and explained to the court, in part, that the two page proposal "on its face . . . indicates that it does not contain all of the terms. There are conversations that took place that [the plaintiff], which prepared this document, purposely included in this document. I believe that I have a right to submit evidence with respect to what those conversations were for the purpose of clarifying what is an ambiguous term in this document." The court sustained the objection.

---

ultimate questions that [it was] faced with." Counsel agreed. The court then stated that it did not think that it was ruling prematurely on that issue, and it sustained the objection. The court precluded Georgetti from testifying concerning any conversations that he had had with Wade relating to Wade's understanding and acknowledgement of what the parties' agreement entailed.

In *Suburban Sanitation Service, Inc.* v. *Millstein*, supra, 19 Conn. App. 283, a case analogous to the present one, the defendants had received a written proposal from the plaintiff, but never signed the document despite allowing the plaintiff to begin work on their septic system. Id., 284–85. "At trial, the [defendants] attempted to present evidence that the written proposal, which they claimed they only partially accepted, was only a part of the agreement between the parties. The trial court refused to allow evidence of any agreement outside of the parameters of the written proposal." Id., 286. Reversing the judgments and remanding the matter for a new trial, we held that the trial court improperly applied the parol evidence rule and "should have allowed the [defendants] to present evidence of the parties' intent that the accepted terms of the written proposal were only a partial integration of their oral agreement. Id., 287.

Here, in repeatedly sustaining the plaintiff's objections to the introduction of evidence concerning any oral agreements between the parties, solely on the basis of the parol evidence rule, the court improperly forbade the introduction of evidence as to the intent of the parties to make this unsigned proposal, with the change orders, the fully integrated agreement of the parties. Before the court properly could apply the parol evidence rule, it was required to conduct an inquiry and to take evidence as to whether the parties intended these documents to be their fully integrated agreement. See id., 286–87. The court improperly barred evidence on this issue.

The case is remanded for further evidentiary proceedings consistent with this opinion, after which the court is directed to make findings as to whether the contract was fully integrated; in the event that the court finds that the contract was fully integrated and no timely appeal is taken from that factual determination, the

judgment is affirmed; in the event that the court finds that the contract was not fully integrated, the judgment is reversed and a new trial is ordered.

In this opinion the other judges concurred.