MARSHALL H. HEAVEN ET AL. *v.* TIMBER HILL, LLC, ET AL.
(AC 26381)

Schaller, DiPentima and McLachlan, Js.

Argued February 21—officially released July 4, 2006

*Michael P. Shea*, with whom was *Erick M. Sandler*, for the appellant (named defendant).

*Eric D. Grayson*, for the appellees (plaintiffs).

*Opinion*

McLACHLAN, J. The defendant Timber Hill, LLC,[1] appeals from the judgment of the trial court, rendered after a trial to the court, awarding the plaintiffs, Marshall H. Heaven and M. H. Heaven Real Estate, LLC,[2] the sum of $200,000, plus interest and attorney's fees. The defendant claims that the court improperly (1) failed to apply the correct standard of proof with respect to its breach of fiduciary duty special defense and counterclaim, (2) interpreted the language of the contract at issue to exclude the building manager's office as "rentable space" and (3) awarded offer of judgment interest pursuant to General Statutes § 52-192a. We disagree and affirm the judgment of the trial court.

The following evidence was presented to the court. The plaintiff is a licensed real estate broker with an office in Greenwich. The defendant is a broker-dealer engaged in the financial services business. Formerly located in New York, the defendant moved to Connecticut and leases commercial space in a complex owned

---

[1] This action was brought against Timber Hill, LLC, Pickwick Plaza Associates and Albert E. Lawrence III. The plaintiffs, Marshall H. Heaven and M. H. Heaven Real Estate, LLC, withdrew the complaint as against Lawrence prior to trial. The trial court, in its memorandum of decision, concluded that the plaintiffs were not entitled to their claimed commission from Pickwick Plaza Associates. The plaintiffs filed a separate appeal challenging that decision, but later withdrew their appeal. Accordingly, in this opinion, we refer to Timber Hill, LLC, as the defendant.

[2] Marshall H. Heaven is the principal of M. H. Heaven Real Estate, LLC. In this opinion, Marshall H. Heaven is referred to as the plaintiff.

by Pickwick Plaza Associates (Pickwick Associates). Pickwick Associates is an Illinois partnership that owns three office buildings in Greenwich known as One Pickwick Plaza, Two Pickwick Plaza and Three Pickwick Plaza.

The plaintiff met Thomas Peterffy, the defendant's principal, at a social gathering in 1997. After learning that the plaintiff was a commercial broker, Peterffy advised the plaintiff that he lived in Greenwich and wanted to relocate his business from Valhalla, New York, to Greenwich. Peterffy asked the plaintiff if he could assist him in locating a suitable space. The plaintiff contacted Albert E. Lawrence III, the general manager of Kennedy-Wilson Properties of Connecticut, Ltd. (Kennedy-Wilson). Kennedy-Wilson managed Pickwick Plaza and also was its listing agent. As the result of the plaintiff's efforts, the defendant subleased space on the second floor of Two Pickwick Plaza from one tenant[3] (Aon lease) and entered into a direct lease with Pickwick Associates for additional space[4] on that same floor (Pomboy lease). Both of those leases were due to expire at the end of June, 2001.

In June, 1999, which was at or about the time that the defendant signed the Pomboy lease, the plaintiff entered into a written commission agreement with Pickwick Associates (Pickwick agreement). The Pickwick agreement addressed the Pomboy lease and the plaintiff's commission for services provided in connection with that lease. The Pickwick agreement also provided, however, that in the event of renewals, extensions, continuations, leases of additional available rental space and the exercise of any options to obtain additional space involving the defendant, Pickwick Associates

---

[3] Alexander and Alexander, Inc., now known as Aon Risk Services, Inc., was the tenant that sublet space to the defendant.

[4] The additional space previously was occupied by Pomboy Asset Management, Inc.

would pay the plaintiff additional brokerage commissions. Payment of any additional commissions was conditioned expressly on the plaintiff's producing a letter from the defendant authorizing the plaintiff to undertake negotiations on the defendant's behalf. "Notwithstanding the foregoing, [the plaintiff ] shall not be paid nor shall he be entitled to any commission pursuant to this Section F, unless [the plaintiff] produces a written letter from [the defendant] authorizing [the plaintiff] to negotiate the renewal, extension or lease of additional space prior to the commencement of the term of the lease for such renewal, extension or additional space and no other broker representing [the defendant] deals with [Pickwick Associates] or [the defendant's] Agent in connection with [the defendant's] renewal, extension or lease of additional space."

Shortly after the signing of the Pomboy lease, Peterffy contacted the plaintiff and requested his assistance in obtaining additional space at Pickwick Plaza. After several telephone calls, Peterffy indicated that he also wanted the plaintiff to assist him in the negotiations for the renewal of the Aon and Pomboy leases. Because the leases expired in June, 2001, Peterffy was concerned that his company would not have sufficient time to locate and move to another office building if the defendant could not remain at Pickwick Plaza. The plaintiff had several conversations with Lawrence about the defendant's requests.

In early January, 2000, the plaintiff received a telephone call from Lawrence. During the course of the conversation, Lawrence indicated that he had gone to Peterffy's office and asked him about the status of the negotiations. The plaintiff told Lawrence that he was interfering with the plaintiff's relationship with his client. Shortly after that conversation, Lawrence asked the plaintiff for a letter from the defendant indicating that the plaintiff was the defendant's broker in real

estate matters with Pickwick Associates. Lawrence stated that the letter was necessary for the payment of any commissions due from Pickwick Associates. Pursuant to that demand, the plaintiff telephoned Peterffy and requested a letter confirming the plaintiff's representation of the defendant in the negotiations. Peterffy refused to issue the letter and thereafter refused to communicate with the plaintiff. The plaintiff suspected that Pickwick Associates and the defendant were negotiating a renewal of the lease without the plaintiff's involvement in order to avoid paying the plaintiff his real estate commissions.

Direct negotiations between the defendant and Pickwick Associates were unsuccessful. In February, 2000, the plaintiff received a telephone call from Bradford L. Jacobowitz, associate general counsel for the defendant. Jacobowitz stated that the defendant wanted to retain the plaintiff's services again to renegotiate its lease with Pickwick Associates. In addition to the space the defendant was already occupying on the second floor of Two Pickwick Plaza, Jacobowitz indicated that the defendant wanted its new lease to include additional space on that floor. The plaintiff agreed to assist the defendant, and Jacobowitz drafted an agreement (Timber Hill agreement). The plaintiff signed the Timber Hill agreement on February 14, 2000. In that agreement, the defendant agreed to pay the plaintiff the sum of $200,000[5] in the event the defendant signed a new lease with Pickwick Associates for "all of the rentable space of the second floor and related support space" of Two Pickwick Plaza. The agreement also contained a merger clause, indicating the parties' intent to create a fully integrated contract.

At the time the Timber Hill agreement was executed, the defendant was leasing the former Aon space and

---

[5] The plaintiff testified that he requested a commission of $300,000, but was told "no," and "[t]hat was the end of [the] discussion."

the former Pomboy space.[6] Additional space on the second floor at Two Pickwick Plaza consisted of the space rented by Jack Trout (Trout space) and the space occupied by Kennedy-Wilson as the building manager's office. After conferring with representatives of the defendant, the plaintiff sent various draft proposals to Pickwick Associates for its consideration. The Kennedy-Wilson space was included in all of those proposals, and some of the proposals included an option to rent space at One Pickwick Plaza if it became available. On June 26, 2000, the defendant and Pickwick Associates added an amendment to their existing lease that extended the term of the Pomboy lease, added the Aon space, added the Trout space, gave the defendant the option to rent additional space at One Pickwick Plaza if it became available and provided that the Kennedy-Wilson space would be added to the lease only if Pickwick Associates was able to secure possession of that space by December 1, 2000.

When the plaintiff discovered that the amendment had been executed by the defendant and Pickwick Associates, he sent a bill for $200,000, his real estate commission, to the defendant. The defendant refused to pay, claiming that the plaintiff failed to satisfy the terms of the Timber Hill agreement because the plaintiff failed to provide the defendant with a new lease and failed to secure a lease of the entire second floor at Two Pickwick Plaza. The defendant asserted that an amendment was not a new lease and that the failure to procure the Kennedy-Wilson space precluded the plaintiff from recovering his commission.

In the present action, the plaintiff sought a commission from the defendant pursuant to the Timber Hill agreement for acquiring all of the rentable space on the second floor at Two Pickwick Plaza and a commission

---

[6] See footnotes 3 and 4.

from Pickwick Associates pursuant to the Pickwick agreement for obtaining the option on space located at One Pickwick Plaza. The defendant filed several special defenses, including one that alleged that the plaintiff had breached his fiduciary duty to the defendant because he claimed a commission from Pickwick Associates when he purported to represent the defendant at the same time. The defendant also filed a counterclaim that alleged that the plaintiff had breached his fiduciary duty to the defendant by failing to disclose his personal interest in the lease transaction, which was claimed to be in conflict with his obligations as the agent and fiduciary for the defendant.

After a four day trial, the parties submitted briefs, and the court issued its memorandum of decision. In that decision, the court concluded that the plaintiff was not entitled to recover any of his claimed commissions under the Pickwick agreement because he did not provide Pickwick Associates with the requisite authorization letter from the defendant. The court further concluded that the plaintiff was entitled to recover his commission under the Timber Hill agreement because the amendment between the defendant and Pickwick Associates, signed on June 26, 2000, included all of the rentable space on the second floor of Two Pickwick Plaza. The court rejected the defendant's argument that the phrase "rentable space" included the space occupied by Kennedy-Wilson, the building manager. The memorandum does not mention the special defenses raised by the defendant, and the court dismissed the defendant's counterclaim "for lack of proof." The court awarded the plaintiff the sum of $200,000, prejudgment interest, costs and attorney's fees. After the court issued its memorandum of decision, the plaintiff filed a motion for interest pursuant to § 52-192a, the offer of judgment statute, which was granted by the court. This appeal followed.

I

The defendant claims that the court failed to apply the correct standard of proof with respect to its breach of fiduciary duty claim against the plaintiff, raised by way of a special defense and counterclaim. Specifically, the defendant argues that the burden shifted to the plaintiff to prove by clear and convincing evidence that his dealings with the defendant were fair because the plaintiff was the defendant's fiduciary and the defendant had alleged a conflict of interest. We disagree and conclude that the burden of proof did not shift to the plaintiff under the circumstances of this case.

"When a party contests the burden of proof applied by the court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 133, 891 A.2d 133 (2006). Here, the court's memorandum of decision fails to state the standard of proof that the court used. "Under such circumstances, we assume that the usual civil preponderance of the evidence standard was used." *Tessitore* v. *Tessitore*, 31 Conn. App. 40, 43, 623 A.2d 496 (1993). We must, therefore, determine whether the preponderance of the evidence standard was the correct standard of proof.

"Our law on the obligations of a fiduciary is well settled. [A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. . . . Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for

establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence. . . . Proof of a fiduciary relationship, therefore, generally imposes a twofold burden on the fiduciary. First, the burden of proof shifts to the fiduciary; and second, the standard of proof is clear and convincing evidence." (Citations omitted; internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 455–56, 844 A.2d 836 (2004). "Such burden shifting occurs in cases involving claims of fraud, self-dealing or conflict of interest." *Satti* v. *Kozek*, 58 Conn. App. 768, 771, 755 A.2d 333, cert. denied, 254 Conn. 928, 761 A.2d 555 (2000).

"Although not always expressly stated, the basis upon which the aforementioned burden-shifting and enhanced burden of proof rests is, essentially, that undue influence will not be presumed; *Connell* v. *Colwell*, 214 Conn. 242, 252, 571 A.2d 116 (1990) (fraud is not presumed and burden of establishing fraud rests on party who alleges it); and that the presumption of fraud does not arise from the relationship itself. We note, however, that [this] rule is somewhat relaxed in cases where a fiduciary relation exists between the parties to a transaction or contract, *and where one has a dominant and controlling force or influence over the other. In such cases, if the superior party obtains a possible benefit,* equity raises a presumption against the validity of the transaction or contract, and casts upon such party the burden of proving fairness, honesty, and integrity in the transaction or contract. . . . Therefore, it is only when the confidential relationship is shown together with suspicious circumstances, or where there is a transaction, contract, or transfer between persons in a confidential or fiduciary relationship, *and where the dominant party is the beneficiary*

*of the transaction, contract, or transfer,* that the burden shifts to the fiduciary to prove fair dealing." (Citations omitted; emphasis added; internal quotation marks omitted.) *Murphy* v. *Wakelee,* 247 Conn. 396, 405–406, 721 A.2d 1181 (1998).

Here, the plaintiff was the defendant's real estate broker for the transaction involving the leasing of the second floor at Two Pickwick Plaza. "A real estate broker is a fiduciary." *Licari* v. *Blackwelder,* 14 Conn. App. 46, 53, 539 A.2d 609, cert. denied, 208 Conn. 803, 545 A.2d 1100 (1988). The plaintiff testified at trial that he was a fiduciary for the defendant. It is undisputed, therefore, that a fiduciary relationship existed between the plaintiff and the defendant. It also is evident, from a review of the defendant's special defense and counter-claim, that the defendant claimed that the plaintiff had a conflict of interest when he negotiated the amendment to the lease between the defendant and Pickwick Associates.

Nevertheless, the burden of proof does not shift to the plaintiff to prove fair dealing under the circumstances of this case. The alleged conflict of interest is the plaintiff's failure to disclose his agreement with Pickwick Associates, which entitled him to an additional commission for the option to rent space at One Pickwick Plaza if it became available. That option was contained in the amendment to the lease signed by the defendant and Pickwick Associates, the same amendment that entitled the plaintiff to a commission from the defendant for procuring the rentable space on the second floor of Two Pickwick Plaza. The defendant argues that the conflict arose because the plaintiff did not disclose that he would receive two commissions, one from the defendant and one from Pickwick Associates, when the amendment was signed.

The Timber Hill agreement applied only to the second floor of Two Pickwick Plaza. The defendant was not

obligated to pay a commission in connection with the option to rent additional space at One Pickwick Plaza. The plaintiff's commission for that option was recoverable under the Pickwick agreement. The commissions were for different spaces in different buildings. More important, however, is the fact that the plaintiff could not recover *any* commissions from Pickwick Associates *unless* he obtained a letter from the defendant indicating that the plaintiff represented the defendant in its real estate dealings with Pickwick Associates. The only authorization given by the defendant was the Timber Hill agreement recognizing the plaintiff as its agent for negotiations involving the second floor of Two Pickwick Plaza.

Under those circumstances, the plaintiff was not the "dominant and controlling force" who was the "beneficiary of the transaction . . . ." *Murphy* v. *Wakelee*, supra, 247 Conn. 405–406. The plaintiff could not and did not receive a commission from Pickwick Associates for the option to rent space at One Pickwick Plaza because the defendant refused to provide the requisite authorization letter. The defendant totally controlled the ability of the plaintiff to receive any commissions from Pickwick Associates. The burden to prove fair dealing did not shift to the plaintiff, despite the existence of a fiduciary relationship and the allegations of a conflict of interest because of that unique situation. Accordingly, the court properly used the preponderance of the evidence standard of proof.

II

The defendant also claims that the court improperly interpreted the term "rentable space" in the Timber Hill agreement to exclude the space used by Kennedy-Wilson as the building manager's office. Specifically, the defendant argues that (1) the plain meaning of that

term encompasses the entire second floor of Two Pickwick Plaza, and (2) the court could not consider the plaintiff's testimony as to what constituted "rentable space" because it was extrinsic evidence, and the agreement at issue was a fully integrated contract. We are not persuaded.

"[A] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) *Poole v. Waterbury*, 266 Conn. 68, 87–88, 831 A.2d 211 (2003).

The defendant claims that the term "rentable space" is clear and unambiguous and should be accorded its plain and ordinary meaning. According to the defendant, all of the "rentable space" means the entire second floor of Two Pickwick Plaza. In support of that interpretation, the defendant relies on the testimony of various witnesses to explain the background and surrounding circumstances leading to the execution of the Timber Hill agreement. The court, however, did not find that testimony as credible as the plaintiff's testimony, and it concluded that "rentable space" did not include the building manager's office.

It should be noted that neither party claimed at trial that the term was clear and unambiguous. In fact, considerable testimony was presented by both parties as to the parties' intent with respect to that issue. The defendant never objected to any testimony concerning the interpretation of "rentable space." Quite clearly, the court and the parties were operating under the assumption that the information was necessary in order for the court to make its determination. We conclude that the term, as used in the agreement, could not be construed without the benefit of the evidence submitted by the parties. It was not clear and unambiguous on its face so as to preclude any inquiry as to the meaning intended by the parties.

Indeed, the defendant does not argue that the court should not have considered the testimony of the defendant's witnesses when it interpreted the term. Instead, the defendant argues that the court could not consider the plaintiff's testimony in reaching its conclusion because it was improper extrinsic evidence. The Timber Hill agreement contained a merger clause, indicating the parties' intent to treat it as a fully integrated contract. By crediting the plaintiff's testimony, the defendant argues, the court violated the parol evidence rule.

"It is, of course, fundamental, as a matter of substantive law, that the terms of a written contract which is intended by the parties to set forth their entire agreement may not be varied by parol evidence." (Internal quotation marks omitted.) *Ruscito* v. *F-Dyne Electronics Co.*, 177 Conn. 149, 160, 411 A.2d 1371 (1979). "The parol evidence rule does not of itself . . . forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract." (Internal quotation marks omitted.) *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269

Conn. 599, 609, 849 A.2d 804 (2004). Because the parol evidence rule is not an exclusionary rule of evidence, but a rule of substantive contract law, the defendant's claim involves a question of law to which we afford plenary review. See *Conn Acoustics, Inc.* v. *Xhema Construction, Inc.*, 88 Conn. App. 741, 745, 870 A.2d 1178 (2005).

The plaintiff claims that the defendant waived its parol evidence claim because it failed to object to the plaintiff's testimony at the time of trial. The failure to object does not preclude review. "The parol evidence rule . . . prohibits the introduction of evidence that varies or contradicts an exclusive written agreement whether or not there is an objection." *Ruscito* v. *F-Dyne Electronics Co.*, supra, 177 Conn. 160. The defendant's argument fails, however, because the plaintiff's testimony did not vary or contradict the Timber Hill agreement. The term "rentable space" was not addressed specifically or defined in the agreement and outside amplification was needed. The parol evidence rule was not a bar because the term "rentable space," not being specific, could be explained by the witnesses' testimony.[7]

The intention of the parties as to the meaning of the term "rentable space" was a question of fact. The court concluded that the Kennedy-Wilson space, which was the building manager's office, was not intended to be included as "rentable space." The court made that determination after assessing the credibility of the witnesses. We will not second-guess that finding. See *Menard* v.

---

[7] The plaintiff moved to strike the testimony of the defendant's witness, Earl Nemzer, after he testified as to the defendant's intention to include the building manager's office as rentable space. The plaintiff claimed that the testimony was barred by the parol evidence rule because the Timber Hill agreement was an integrated contract. The court overruled the objection, concluding that such testimony was background information and did not vary the terms of the agreement.

*Gaskell,* 92 Conn. App. 551, 556–57, 885 A.2d 1254 (2005).

## III

The defendant's final claim is that the court improperly awarded the plaintiff interest pursuant to § 52-192a,[8] the offer of judgment statute. Specifically, the defendant argues that the plaintiff did not comply with the statutory requirements because he did not make an offer of judgment that was left open for sixty days.

A review of the trial court file indicates that the plaintiff filed an offer of judgment in the amount of $200,000

[8] General Statutes (Rev. to 2005) § 52-192a provides in relevant part: "(a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may, not later than thirty days before trial, file with the clerk of the court a written 'offer of judgment' signed by the plaintiff or the plaintiff's attorney . . . offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney . . . . Within sixty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or the defendant's attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. . . .

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in the plaintiff's 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount . . . . In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. . . ."

This statute was amended by Public Acts 2005, No. 05-275, § 4, but the amended provisions are applicable only to actions accruing on or after October 1, 2005.

on June 18, 2003. The plaintiff filed a withdrawal of that offer of judgment on June 24, 2003. On June 25, 2003, the plaintiff filed a "renewed" offer of judgment in the same amount of $200,000. Two pleadings were filed by the plaintiff on June 26, 2003, (1) a withdrawal of the renewed offer of judgment and (2) a later withdrawal of the withdrawal of the renewed offer of judgment.

The trial ended on December 5, 2003. The parties filed their posttrial briefs on May 12, 2004, after the transcript was completed and delivered to counsel. Reply briefs were filed by the parties on June 25, 2004. The plaintiff included offer of judgment interest as part of his proposed damages in both his principal brief and his reply brief. The defendant did not address that issue in either brief. Trial counsel for the defendant was replaced by current counsel on September 30, 2004. The court's memorandum of decision was filed on October 21, 2004. The plaintiff filed a motion for offer of judgment interest and attorney's fees, pursuant to § 52-192a, on October 25, 2004.

On November 22, 2004, the defendant's counsel sent a letter to the trial court advising it of a recent Superior Court decision on the issue of offer of judgment interest and stating that a withdrawal of a prior withdrawal of an offer of judgment could not be considered an offer of judgment pursuant to § 52-192a. The plaintiff's counsel sent a response to the trial court on November 29, 2004, which was coded into the trial court file, detailing a history of communications between him and the defendant's trial counsel about the plaintiff's offer of judgment. A copy of that letter was sent to the defendant's counsel.

In that letter, the representation is made that at least fifteen conversations took place between the plaintiff's counsel and the defendant's trial counsel in which they

agreed that the "renewed" offer of judgment was valid. It also contains the representation that the defendant's trial counsel expressly stated that the defendant would not raise an objection to the plaintiff's withdrawal of the withdrawal because "it came at his suggestion." The letter proceeds to provide a lengthy recitation of the reasons for the filing of the various offers of judgment and withdrawals and then indicates that the withdrawal of the "renewed" offer of judgment was made in error, thus precipitating the filing of the withdrawal of the withdrawal minutes later. The letter notes that shortly after that, there was a conversation between counsel as to the status of the record. The letter states: "Importantly, we asked [trial counsel for the defendant] point blank if he would raise an objection to a withdrawal of the withdrawal and he stated that 'I will not raise an objection to a withdrawal of the withdrawal of the Offer of Judgment.' The reason of course is that withdrawing the withdrawal came at his request not ours. . . . Had [trial counsel for the defendant] ever mentioned that [the defendant] would raise an objection, it would have taken [ten] minutes to file a 'Second Renewed Offer of Judgment' but we relied on (a) the Practice Book which permits a withdrawal of a withdrawal and of equal importance (b) [trial counsel for the defendant's] word." Significantly, there is no response from the defendant's counsel to that letter.

"The question of whether the trial court properly awarded interest pursuant to § 52-192a is one of law subject to de novo review." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 55, 717 A.2d 77 (1998). As we noted, the correspondence from the defendant's counsel and the plaintiff's counsel to the court is in the file of the trial court. The correspondence being part of that file, we are able to consider the content therein. "Appellate courts . . . review the whole record and do not overlook material contained in the trial court's file or the

appendix to the [plaintiff's] brief. We may take judicial notice of the contents of the court's file." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 87 Conn. App. 814, 817, 867 A.2d 145, cert. denied, 274 Conn. 918, 879 A.2d 895 (2005).

It was the defendant's burden to provide this court with an adequate record for our review. See *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 607, 710 A.2d 190 (1998); Practice Book § 61-10. "It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court" (Citations omitted; internal quotation marks omitted.) *Gladstone, Schwartz, Baroff & Blum* v. *Hovhannissian*, 53 Conn. App. 122, 127, 728 A.2d 1140 (1999). Without the necessary factual and legal conclusions furnished by the trial court, any decision made by us respecting the defendant's claims would be entirely speculative. See id.

From the trial court record, it is not clear why the court awarded the plaintiff offer of judgment interest on the basis of the "renewed offer of judgment," which had apparently been withdrawn. It is possible that the court found, on the basis of the letter by the plaintiff's counsel, that the defendant had agreed that the renewed offer of judgment was still valid and had waived any objection thereto. The defendant, however, did not file a motion for articulation seeking an explanation from the court as to the basis for its finding that the renewed offer of judgment was still valid. See Practice Book § 66-5. "An articulation may be necessary where the

trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear." (Citations omitted.) *State* v. *Wilson*, 199 Conn. 417, 434, 513 A.2d 620 (1986). "It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The . . . failure to seek an articulation of the trial court's decision to clarify the aforementioned issues and to preserve them properly for appeal leaves this court without the ability to engage in a meaningful review." (Internal quotation marks omitted.) *Bebry* v. *Zanauskas*, 81 Conn. App. 586, 594, 841 A.2d 282 (2004). Accordingly, because it is not clear from the record why the court found that the renewed offer of judgment was still valid, we decline to review the claim.

The judgment is affirmed.

In this opinion the other judges concurred.