******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SULLO INVESTMENTS, LLC *v.* MARCI MOREAU
(AC 35866)

DiPentima, C. J., and Beach and Bear, Js.*

*Submitted on briefs March 14—officially released July 1, 2014*

(Appeal from Superior Court, judicial district of Hartford, Schuman, J.)

*Patrick W. Boatman* filed a brief for the appellant (defendant).

*Mario R. Borelli* filed a brief for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, Marci Moreau, appeals from the judgment of the trial court rendered in favor of the plaintiff, Sullo Investments, LLC, regarding the defendant's liability as guarantor on a promissory note that her father-in-law, Aurelien Moreau, executed in favor of the plaintiff. On appeal, the defendant claims that the court erred because (1) it determined the intent of the parties to the note and guarantee on the basis of extrinsic evidence and not the language of those documents, in violation of the parol evidence rule; (2) the note was not supported by consideration; and (3) her special defense of lack of consideration was admitted due to the plaintiff's failure to reply to it in timely fashion.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the present appeal. In 2006, the defendant and her husband, Michael Moreau, formed a limited liability company, Sauce, LLC, as part of their plan to open a restaurant called Sauce. Michael Moreau "took the steps to actually start the restaurant." Sauce, LLC, decided in November, 2006, to lease property located at 124 Hebron Avenue in Glastonbury as the premises for the restaurant. Shortly thereafter, in late 2006 or early 2007, Michael Moreau began to talk to Joseph Sullo about purchasing restaurant equipment from one of Sullo's companies, Classic Restaurant Supply, LLC (Classic). After Michael Moreau made an unsuccessful attempt to finance the purchase with a loan from Sovereign Bank, Sullo agreed to finance the purchase through a loan from the plaintiff, another one of Sullo's companies.

The plaintiff sought to put a second mortgage on the Moreaus' residence in order to secure the loan. A title search conducted by the plaintiff's attorney at the time revealed that there was little to no equity in the residence, however, and it decided against proceeding with the loan. By that time, in approximately August, 2007, the Moreaus were "well into the project." Michael Moreau conveyed to Sullo that he was "desperate" to secure the loan because the restaurant was "supposed to open in . . . two months . . . ." He and Sullo then began to talk about the possibility of securing the loan instead with a mortgage on the residence of Aurelien Moreau, Michael Moreau's father.

Michael Moreau subsequently approached Aurelien Moreau and asked him to cosign a loan for the purchase of restaurant equipment. Aurelien Moreau agreed to do so, and he executed a note in favor of the plaintiff on September 20, 2007, and an open-ended mortgage deed in favor of the plaintiff on September 27, 2007. These two documents were part of a set of documents e-mailed from the plaintiff's attorney at the time to Michael Moreau on September 20, 2007. Also included

in the set of documents was a guarantee, which the defendant and Michael Moreau executed on September 26, 2007.

The note was in the amount of $255,000. The parties stipulated before trial that "Aurelien Moreau did not personally receive payment of any part of the principal amount of the Note." Instead, the plaintiff "advanced [the amount] to Classic . . . on behalf of Sauce, LLC . . . for the purchase of restaurant equipment and supplies for a restaurant owned and operated by Sauce, LLC." All of the payments on the note that the plaintiff received were made by Sauce, LLC, with checks signed by both Michael Moreau and the defendant. According to Sullo, these payments amounted to "the first ten [thousand dollars] . . . [and] then after . . . little dribs and drabs." Sauce, LLC, eventually stopped making payments in late 2008, portending the restaurant's closure in late September, 2009. After the closure, the plaintiff sold the restaurant equipment for approximately $46,000 to the owners of the next restaurant to occupy the premises at 124 Hebron Avenue.

The first filing in the present action was the plaintiff's application for a prejudgment remedy on May 23, 2012, to which the plaintiff attached a proposed complaint. The operative complaint, filed on August 15, 2012, is identical to the proposed complaint and alleges that the defendant[2] is liable under the guarantee for the amount of the note, as well as for interest, costs, and fees incurred by the plaintiff in both the present action and the plaintiff's simultaneously commenced foreclosure action against Aurelien Moreau. We note with respect to the foreclosure action that the parties agreed to consolidate it with the present action on July 18, 2012, and that the court rendered a judgment by stipulation in favor of the plaintiff on June 10, 2013. *Sullo Investments, LLC* v. *Moreau*, Superior Court, judicial district of Hartford, Docket No. CV-11-6026789-S (June 10, 2013).[3]

The defendant filed her answer and two special defenses on August 30, 2012. Her first special defense is that the note and therefore her obligation as guarantor are unenforceable for want of consideration because the plaintiff has never lent money to Aurelien Moreau. The defendant's second special defense is that the plaintiff must adjust any obligation that she may have as guarantor to reflect the sale of the restaurant equipment to the new tenants of the premises formerly occupied by Sauce, LLC. The plaintiff did not file a reply to the defendant's answer and special defenses, but denied them orally during closing argument at trial.

The parties tried the matter to the court on May 29 and June 6, 2013. On June 6, 2013, the court orally rendered its decision in favor of the plaintiff. It subsequently issued an order on July 1, 2013, in which it referenced its June 6, 2013 oral decision, noted the

parties' agreement concerning the amount of damages, attorney's fees and costs, and rendered judgment in favor of the plaintiff and against the defendant in the amount of $295,010.38. This appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

The defendant first claims that the court's holding that she is liable as guarantor is contingent upon its erroneous finding that the parties to the note and guarantee intended for Sauce, LLC, to receive the loan proceeds in order to purchase restaurant equipment, even though the language in both documents clearly states that the parties intended for only Aurelien Moreau to receive the loan proceeds. There are two prongs to the defendant's claim. First, the defendant argues that the court could not have made its finding on the basis of the language in the note or guarantee, and, therefore, the court violated the parol evidence rule by considering extrinsic evidence that contradicted or varied such language. Even if we determine that the parol evidence rule does not apply, the defendant further argues that the court nonetheless erred with respect to its finding of intent because the evidence at trial demonstrated that Aurelien Moreau was unaware of the transaction's bona fide terms. We are not persuaded.

## A

Because the parol evidence rule is a rule of substantive contract law the defendant's claim involves a question of law to which we afford plenary review. See *Conn Acoustics, Inc.* v. *Xhema Construction, Inc.*, 88 Conn. App. 741, 745, 870 A.2d 1178 (2005). "The rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . .

"The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the *use* of such evidence *to vary or contradict the terms* of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant.

By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. . . . These recognized exceptions are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated, or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Citations omitted; emphasis in original; internal quotation marks omitted.) *TIE Communications, Inc.* v. *Kopp*, 218 Conn. 281, 288–89, 589 A.2d 329 (1991).

The court held with respect to the issue of intent the following: "The note specifically states that . . . '[t]he mortgage is part of a commercial transaction' . . . [a]nd that . . . '[t]he monies are not to be used for personal, family or household purposes' . . . . There is nothing misleading about this language. If [the parties] did not understand that clear language, they could have consulted a lawyer. . . . [Aurelien] Moreau testified, as [the plaintiff's attorney] just notes, not only then but on other occasions, that he understood that he would not be getting any money, and that instead the proceeds would go to Sauce [LLC], either in money or equipment. So the defendants, who are educated people, with some experience with mortgages and business, actually understood the basic purpose of the loan."

The defendant's argument requires us to accept her erroneous interpretation of the note and guarantee as providing that the parties to both documents intended for only Aurelien Moreau to receive the loan proceeds. We decline to do so. "The intent of the parties as expressed in a contract is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words . . . ." (Internal quotation marks omitted.) *Prymas* v. *New Britain*, 122 Conn. App. 511, 517, 3 A.3d 86, cert. denied, 298 Conn. 915, 4 A.3d 833 (2010). None of the language used or words written in the note or guarantee, however, expressly or implicitly states that the parties intended for only Aurelien Moreau to receive the loan proceeds. In contrast, as observed by the court, the note expressly states that "[t]he [m]aker warrants and represents that the [l]oan is for business or investment purposes . . . that the transaction of which th[e] [m]ortgage is a part is a 'commercial transaction' as defined by the statutes of the [s]tate of Con-

necticut . . . [and that] [m]onies now or in the future to be advanced to or on behalf of [the] [b]orrower are not and will not be used for personal, family or household purposes."

The defendant acknowledges as much by crafting her interpretation of the note and guarantee on the basis of what they do *not* state. Specifically, the defendant asserts with respect to the note the following: "[N]owhere in the note does it state that Aurelien Moreau intended to borrow $255,000 for the benefit of . . . Sauce, LLC, or that such monies would be forwarded for the benefit of Sauce, LLC, and/or [Michael Moreau], without previous authority and/or consent in writing." She further asserts with respect to the guarantee: "Nowhere in the language of the guarant[ee] does it indicate that the loan proceeds were to be used for the benefit of Sauce, LLC, for the purchase of restaurant equipment. Nor did it indicate that Aurelien Moreau was obtaining the loan for the benefit of Sauce, LLC." We note in response that our well established standards provide that we interpret contracts on the basis of the language used, not omitted, therein. The defendant's argument thus fails because the court could not have violated the parol evidence rule where the evidence upon which it relied could not have contradicted or varied terms not present in either the note or guarantee.

B

The defendant's collateral argument that the court nonetheless erred because the evidence at trial did not support the court's finding of intent also fails. Again, the defendant challenges the court's finding of intent on the ground that the evidence demonstrated Aurelien Moreau's lack of awareness regarding the transaction's bona fide terms. "[T]he determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact. As an inference of fact, it is not reversible unless the trial court could not reasonably have arrived at the conclusion that it reached." *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 274–75, 439 A.2d 314 (1981). The plaintiff's attorney engaged in a lengthy colloquy with Aurelien Moreau at trial in which Aurelien Moreau repeatedly affirmed that he understood the transaction's bona fide terms,[4] even though he previously testified that he had not known in September, 2007, that he had "voluntarily given a $255,000 mortgage on [his] home." Furthermore, Aurelien Moreau stated at both the beginning and end of his trial testimony that he understood that he was "cosign[ing] in case something happen[ed] and [to] provide some funds for [Michael Moreau]." We accordingly hold that the court in the present action reasonably could have arrived at the conclusion that it reached on the issue of intent, given the totality of the evidence at trial.[5]

## II

The defendant also claims that the court erred because there was no consideration to support the note and therefore the guarantee, invalidating her obligation thereunder.[6] Specifically, the defendant argues that consideration did not flow between the plaintiff and Aurelien Moreau because the former did not pay the loan proceeds to the latter, even though the loan proceeds were the benefit for which Aurelien Moreau bargained. We are not persuaded.

"It almost goes without saying that consideration is [t]hat which is bargained-for by the promisor and given in exchange for the promise by the promisee . . . . We also note that [t]he doctrine of consideration does not require or imply an equal exchange between the contracting parties. . . . Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. . . . Whether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard." (Internal quotation marks omitted.) *Martin Printing, Inc.* v. *Sone*, 89 Conn. App. 336, 345, 873 A.2d 232 (2005). "The conclusion drawn from the facts so found, i.e., whether a particular set of facts constitutes consideration in the particular circumstances, is a question of law . . . and, accordingly, is subject to plenary review." (Internal quotation marks omitted.) *Milford Bank* v. *Phoenix Contracting Group, Inc.*, 143 Conn. App. 519, 529, 72 A.3d 55 (2013).

The court held with respect to the issue of consideration the following: "The defendants claim that there was no consideration in the underlying note; however, the note explicitly provides that the creditor would loan $255,000. In any event, the consideration does not have to be specified in the note. Here, Aurelien Moreau's consideration was the benefit of helping his son finance the purchase of restaurant equipment, so there was consideration for the note. I find that it was valid, and that the defendant . . . is bound by it. Well, in fact, Aurelien Moreau is bound by it, and [the defendant] is bound as guarantor of a valid note."

The defendant's characterization of the loan proceeds as the benefit for which Aurelien Moreau bargained necessarily relies upon her interpretation of the note as stating the parties' intent for only Aurelien Moreau to receive the loan proceeds, which we already have deemed untenable in part I A of this opinion. Furthermore, the defendant does not cite to any relevant binding authority to support her proposition that contract law requires the consideration supporting the note to have flowed from the plaintiff to Aurelien Moreau in the form of loan proceeds. Given (1) the trial court's factual findings on the issue of intent, which we have

held to be not erroneous,[7] and (2) our nonspecific, well established definition of consideration, which this court has held to apply to nonfinancial bargained-for benefits; see *Deutsch Bank National Trust Co.* v. *DelMastro*, 133 Conn. App. 669, 679–81, 38 A.3d 166, cert. denied, 304 Conn. 917, 40 A.3d 783 (2012); we conclude that the trial court did not err in holding that the consideration underlying the note was the benefit that Aurelien Moreau received in helping Michael Moreau purchase the restaurant equipment.[8]

### III

The defendant's final claim is that the court erred in holding that there was consideration to support the note because her first special defense regarding the lack of consideration was admitted under our rules of practice by virtue of the plaintiff's failure to reply to it in timely fashion.[9] This claim is without merit.

This claim requires us "to interpret the scope of [certain] rules of practice; accordingly, we are presented with a question of law over which our review is plenary." *Zirinsky* v. *Zirinsky*, 87 Conn. App. 257, 269, 865 A.2d 488, cert. denied, 273 Conn. 916, 871 A.2d 372 (2005). Practice Book § 10-50 provides in relevant part: "Facts which are consistent with [the plaintiff's] statements [of fact] but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. . . ." See also *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 705, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002). The admission of a special defense accordingly entails the admission of the facts pleaded therein. To this end, we note that the rule of practice upon which the defendant relies, Practice Book § 10-19, further provides in relevant part that "[e]very material allegation in any pleading which is not denied by the adverse party shall be deemed to be admitted . . . ." Assuming arguendo that the defendant is correct in positing that the plaintiff's failure to file a timely reply prompts the application of the rule, the plain language of the rule establishes its effect to be the admission of the allegations contained in the defendant's special defenses.

The defendant declares in her first special defense that Aurelien Moreau's obligation under the note and her obligation under the guarantee are "unenforceable for want of consideration." These are legal conclusions and not factual allegations, however, because "[t]he sufficiency of consideration is a question of law based upon the evidence . . . ." *Middlebury* v. *Steinmann*, 189 Conn. 710, 716 n.3, 458 A.2d 393 (1983). The plain and unambiguous language of Practice Book § 10-19 does not apply to legal conclusions. Cf. *Birchard* v. *New Britain*, 103 Conn. App. 79, 85, 927 A.2d 985 ("[a] judicial admission dispenses with the production of evidence by the opposing party as to the *fact* admitted, and is conclusive upon the party making it" [emphasis

added; internal quotation marks omitted]), cert. denied, 284 Conn. 920, 933 A.2d 721 (2007). The defendant has not cited to any authority that establishes otherwise. Furthermore, the allegations in the first special defense that the plaintiff has never lent money to Aurelien Moreau were before the court as uncontroverted facts at trial because the parties had stipulated to them beforehand. The defendant's claim thus fails on multiple levels: theoretically, because the rule of practice upon which she relies does not apply, and practically, because the allegations that she argues should have been before the court as judicial admissions were before it as stipulated facts.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date that this case was submitted.

[1] The defendant's statement of the issues provides for a fourth issue of whether the court erred in finding that the plaintiff ever made any loan to Aurelien Moreau. The defendant has not briefed this issue for this court, however, and we therefore decline to address it because "[w]e are not required to review claims that are inadequately briefed," let alone claims that are not briefed at all. (Internal quotation marks omitted.) *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 406, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

[2] Michael Moreau is not a defendant in the present action.

[3] "Appellate courts may take judicial notice of files of the trial court in the same or other cases." *Stuart* v. *Freiberg*, 142 Conn. App. 684, 687 n.3, 69 A.3d 320, cert. granted on other grounds, 310 Conn. 921, 77 A.3d 142 (2013).

[4] The following colloquy occurred between the plaintiff's attorney and Aurelien Moreau:

"Q. You understood at that time that he needed someone to provide additional backing for him in order to . . . obtain the loan, in other words to cosign for the loan?

"A. I cosigned with him. . . .

"Q. Yes, okay. And you understood that you would not personally be receiving any money from that loan. Correct?

"A. Yes.

"Q. And . . . you understood at the time that the restaurant, Sauce, LLC, would be receiving the money for that loan?

"A. Yes.

"Q. And at the time that you signed [the note], you weren't under . . . threat of force, were you?

"A. No."

[5] Because we have determined that the evidence at trial was sufficient for the court to have reasonably arrived at the conclusion that it reached on the issue of intent, we need not address the defendant's perplexing contention that Aurelien Moreau could not have understood the transaction's bona fide terms due to Michael Moreau's status as the plaintiff's agent at all relevant times.

[6] The defendant does not claim that her guarantee lacked consideration, nor could she reasonably do so in light of the following language of the guarantee: "Guarantor hereby waives and agrees not to assert or take advantage of any defense based upon . . . [t]he consideration for this Guaranty (or lack or inadequacy thereof) . . . ."

[7] We also note the following exchange between the defendant and the plaintiff's attorney during her trial testimony:

"Q. So you understood that Sauce, LLC, was receiving the benefit of that arrangement in order to be able to purchase the equipment. Correct?

"A. If it's a benefit, yes."

[8] In light of the court's finding of consideration for the note, and our affirmance thereof, we need not decide whether the language of the guarantee set forth in footnote 6 of this opinion applies to bar the defendant's argument that the note lacks consideration sufficient to provide consideration for the guarantee.

[9] Even though the defendant refers to both of her special defenses in

making this claim, we address only her first special defense. We do so because none of the defendant's claims on appeal implicate the issue underlying her second special defense, which is whether she has a right to reduce any obligation that she may have under the guarantee by virtue of the sale of the restaurant equipment.

—————————————————————————